# Thomas H. Oxenham, III

## v.

# Virginia Johnson

Record No. 900544

March 1, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Hassell, JJ., and Poff, Senior Justice

*Elizabeth Oxenham Davis (Susan K. Rohde; Thomas H. Oxenham, III; Oxenham, Davis & Rohde,* on briefs), for appellant.

*Barbara J. Gaden, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we consider whether a trial court properly imposed a sanction upon a lawyer who brought an unsuccessful action and failed to conduct any pretrial investigation of allegedly adverse information. Specifically, we decide whether, and under what cir-

cumstances, the Code § 8.01-271.1 duty of "reasonable inquiry" required the lawyer to investigate information opposing counsel gave him indicating that the lawyer's client might not prevail in the litigation.

On July 8, 1988, Virginia Johnson, a licensing inspector for the Virginia Department of Social Services, accompanied by Barbara Ann Gestwick, the licensing administrator, and William Davidson, a zoning officer of the City of Richmond, sought permission from Ralph M. Montecalvo to inspect his residence in Richmond for possible violation of Code § 63.1-182. Code § 63.1-182 prohibits the operation of a home for the care of more than four aged, infirm or disabled adults without obtaining a license therefor from the Virginia Department of Social Services.

Upon advice of counsel, Montecalvo refused to permit an inspection. Whereupon, Johnson, Gestwick and Davidson went to a magistrate and got a search warrant.[1] Although allegedly not requested to do so, the magistrate also issued an arrest warrant charging Montecalvo with the statutory violation of interfering with Johnson in the performance of her duties (the interference charge).[2] The arrest warrant showed that the magistrate found probable cause for the interference charge "based on the sworn statements of Virginia Johnson . . . Complainant."

Johnson appeared pursuant to subpoena and was the only prosecution witness who testified at the trial of the interference charge. Montecalvo was found not guilty.

Shortly thereafter, Thomas H. Oxenham, III, Montecalvo's counsel in the criminal proceeding, filed this malicious prosecution action on behalf of Montecalvo against Johnson because of her alleged instigation of the interference charge. In a pretrial deposition, Montecalvo testified that he had never talked to Johnson, that he had not felt "harassed" by Johnson, and that he had no reason to believe she bore him any ill will. Prior to trial, opposing counsel advised Oxenham orally, in responsive pleadings, and in legal memoranda filed in the case, that Gestwick, not Johnson, had executed the affidavit for the search warrant, and that no one had requested the arrest warrant to be issued against Montecalvo

---

[1] The inspection confirmed that Montecalvo was operating an adult home without a license, and he later pleaded guilty to a violation of Code § 63.1-182.

[2] Code § 63.1-182 provides in part that "[a]ny person who interferes with any authorized agent of the Commissioner [of Social Services] in the discharge of his duties . . . shall be guilty of a misdemeanor."

for interfering with them in the performance of their duties. Nevertheless, Oxenham continued to press Montecalvo's claim by filing and signing two memoranda of law and his client's answers to Johnson's interrogatories.

At trial, Montecalvo's evidence that linked Johnson to the institution of the interference charge consisted of the magistrate's notation on the warrant and Montecalvo's testimony that Johnson was the only prosecution witness who appeared at the interference charge trial. Johnson's evidence confirmed her counsel's pretrial information to Oxenham. After only 10 minutes' deliberation, a jury returned a verdict for Johnson and judgment was entered on the verdict.

Invoking Code § 8.01-271.1, Johnson filed a "Motion to Assess Attorneys' Fees and Costs" against Oxenham and Montecalvo,[3] alleging violations of a duty to make reasonable inquiry regarding Johnson's role in the issuance of the arrest warrant. As pertinent, Code § 8.01-271.1 provides:

> The signature of an attorney . . . constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, *formed after reasonable inquiry*, it is well grounded in fact . . ., and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

> An oral motion made by an attorney . . . in any court of the Commonwealth constitutes a representation by him that (i) to the best of his knowledge, information and belief *formed after reasonable inquiry* it is well grounded in fact . . ., and (ii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> If a pleading, motion, or other paper is signed or made in violation of this rule, the court . . . shall impose upon the person who signed the paper or made the motion . . . an appropriate sanction . . . .

---

[3] Concluding that there was no evidence that Montecalvo had participated in "the frivolous filing and prosecution of this suit," the trial court denied the motion for a sanction against him.

(Emphasis added.)

Oxenham's failure, after being told by opposing counsel that Johnson had nothing to do with the issuance of the arrest warrant, led the trial court "to the inevitable conclusion that the purpose of filing the motion for judgment was not to prevail on the merits but to harass the defendant." The court also found that Oxenham failed in his duty to "continually review and re-evaluate his position" by failing to "follow up with investigation or . . . conduct any discovery."

Accordingly, the court assessed a sanction against Oxenham in the sum of $4,500, representing a part of Johnson's counsel's projected billings of $10,383. Oxenham appeals.

First, we review some of the policy considerations in sanction cases. The possibility of a sanction can protect litigants from the mental anguish and expense of frivolous assertions of unfounded factual and legal claims and against the assertions of valid claims for improper purposes. And, sanctions can be used to protect courts against those who would abuse the judicial process. Yet the threat of a sanction should not be used to stifle counsel in advancing novel legal theories or asserting a client's rights in a doubtful case. Finally, courts should take care that the litigation of a sanction issue does not itself defeat one purpose of Code § 8.01-271.1, that of reducing the volume of unnecessary litigation.

Because of the harm that can be caused by an unjustified imposition of a sanction, Oxenham argues that the standard of review applicable in a sanction case in Virginia is "somewhat deferential . . . [but] appears more closely akin to a *de novo* review" than to an abuse-of-discretion standard. Oxenham notes that in *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. ___, ___, 110 S.Ct. 2447, 2461 (1990), the United States Supreme Court held that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."[4] Oxenham, however, contends that this Court has adopted a standard "somewhat at odds" with the federal standard, citing *County of Prince William* v. *Rau*, 239 Va. 616, 620, 391 S.E.2d 290, 293 (1990), and *Tullidge* v. *Board of Sup. of Augusta County*, 239 Va. 611, 614, 391 S.E.2d 288, 289 (1990). These cases do not support Oxenham's contention.

---

[4] Rule 11 of the Federal Rules of Civil Procedure and Code § 8.01-271.1 are similar in the respects material here.

■ *Tullidge* merely held that where the issue underlying the imposition of a sanction "is one of law, and not fact, we do not accord the trial court's ruling the same weight it would be accorded if reached upon conflicting factual evidence." 239 Va. at 614, 391 S.E.2d at 289; *see Rau*, 239 Va. at 620, 391 S.E.2d at 293. This holding does not differ in substance from the statement in *Cooter & Gell* that "[a trial] court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a *clearly* erroneous assessment of the evidence." 496 U.S. at _____, 110 S.Ct. at 2461 (emphasis added). Thus, we apply an abuse-of-discretion standard in reviewing a trial court's award or denial of a sanction.

■ We now turn to this case. To create a factual issue in his malicious prosecution action against Johnson, Montecalvo was required to present credible evidence: (1) that the prosecution was set on foot by Johnson and that it terminated in a manner not unfavorable to Montecalvo; (2) that it was instituted or procured by the cooperation of Johnson; (3) that it was without probable cause; and (4) that it was malicious. *See Bain v. Phillips*, 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976). Legal malice, inferred from the circumstances, suffices for an award of compensatory damages, but actual malice must be shown to recover punitive damages. *F.B.C. Stores, Inc. v. Duncan*, 214 Va. 246, 252, 198 S.E.2d 595, 600 (1973).

Johnson contends that Montecalvo had no evidence that she instituted the prosecution or that her actions were malicious. According to Johnson, if Oxenham had complied with his duty of "reasonable inquiry" and interviewed her witnesses at any time before trial, he would have discovered that he could not have established that Johnson "instituted or procured" the prosecution or that she acted with malice. Therefore, Johnson argues, Oxenham's pleadings and oral motions violated Code § 8.01-271.1 because they were frivolous and were filed for an improper purpose.

■ Because no cross-error was assigned to the trial court's ruling that the initial filing was justified, we are concerned only with Oxenham's conduct *after* the action was filed. Although we agree with Oxenham's contention that Code § 8.01-271.1 imposes no continuing duty upon a lawyer to "update his pleadings in light of any new findings," *see Pantry Queen Foods v. Lifschultz Fast Freight*, 809 F.2d 451, 454 (7th Cir. 1987) (construing Federal Rule of Civil Procedure 11), we reject his contention that he had

*no* further duty to investigate Johnson's role after filing the motion for judgment. The duty of "reasonable inquiry" arises *each time* a lawyer files a "pleading, motion, or other paper" or makes "an oral motion." Code § 8.01-271.1. If Oxenham had filed any paper or made any motion in the case *after* he knew, or reasonably should have known, that he could not create a factual issue of Johnson's involvement and malice, the court would have been justified in imposing a sanction against him. *See, e.g., Schoenberger v. Oselka*, 909 F.2d 1086, 1088 (7th Cir. 1990) (construing Federal Rule of Civil Procedure 11).

■ Because different levels of malice are required in the recovery of compensatory and punitive damages for malicious prosecution, we consider first Montecalvo's claim for compensatory damages. Initially, the trial court found that the documentary and circumstantial evidence of Johnson's role in the institution of the criminal action against Montecalvo was sufficient to justify *filing* Montecalvo's malicious prosecution action. Apparently, the same evidence also justified submission of the case for jury consideration.[5] Indeed, the jury may not have believed the three witnesses who, in contradiction to the language in the arrest warrant, denied Johnson's role in instituting the interference charge against Montecalvo. Juries are not required to accept testimony which is contradicted by credible documentary or circumstantial evidence. *See Chaves v. Johnson*, 230 Va. 112, 122-23, 335 S.E.2d 97, 104 (1985) (circumstantial and documentary evidence); *Drake v. National Bank of Commerce*, 168 Va. 230, 243-44, 190 S.E. 302, 308 (1937) (circumstantial evidence).

■ Additionally, the appearance of Johnson's name as the complainant on the arrest warrant sufficed to support an inference that she acted with legal malice in instigating the interference charge against Montecalvo. Whoever caused the arrest warrant to issue had no probable cause to claim an unlawful interference with Johnson's performance of her duties because Montecalvo had a constitutional right to require a search warrant before such an inspection. This lack of probable cause was sufficient to support an

---

[5] Citing *Brown v. Koulizakis*, 229 Va. 524, 331 S.E.2d 440 (1985), the trial court said that "[t]he only reason the case survived the motion to strike was the court's policy against striking the evidence in order to preserve a full record on appeal . . . ." However, in conformity with *Brown*, the court must have concluded that the evidence did not make it "conclusively apparent that plaintiff ha[d] proven no cause of action against defendant." *Id.* at 531, 331 S.E.2d at 445 (citation omitted).

inference of Johnson's legal malice. *Giant of Virginia, Inc.* v. *Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 276 (1967). Accordingly, the trial court's conclusion that this claim was frivolous was erroneous and an abuse of discretion.

Next, we consider whether the evidence supports the trial court's finding that Oxenham's failure to investigate Montecalvo's claim for compensatory damages demonstrated an intent "not to prevail on the merits but to harass [Johnson]." Although a number of adverse inferences might be drawn from Oxenham's failure to make any investigation after filing the motion for judgment, an intent to harass is not one of them. The record contains no evidence of threats or expressions of ill will on Oxenham's part, no pattern of persistent and harassing pleadings, and nothing to show that Oxenham was not attempting to recover damages for his client. Under these circumstances, we conclude that the trial court's inference of an intent to harass from a failure to investigate was based on a clearly erroneous assessment of the evidence and, therefore, was an abuse of discretion.

For these reasons, we hold that the trial court erred in basing its award, in whole or in part, upon Oxenham's continued assertion of Montecalvo's claim for compensatory damages.

We now consider whether the sanction might have been justified because of Oxenham's continued assertion of the punitive damage claim. Johnson's legal malice in instigating the arrest warrant would not have authorized an award of punitive damages. In malicious prosecution actions, evidence of "misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others" is required. *Giant of Virginia*, 207 Va. at 685, 152 S.E.2d at 277.

Montecalvo's pretrial discovery testimony established conclusively that Johnson was not guilty of misconduct or actual malice. Furthermore, if Oxenham had made "reasonable inquiry," he would have known, or reasonably should have known, that he had no evidence that Johnson had acted in reckless and wanton disregard of Montecalvo's rights. Therefore, Oxenham should not have asserted Montecalvo's frivolous claim for punitive damages at trial.

However, the trial court did not distinguish between the two damage claims in its award of an attorneys' fee sanction. Attorneys' fee sanctions have been imposed under Federal Rule 11 for asserting a frivolous claim with nonfrivolous ones, where the

defense of the frivolous claim was essentially unrelated to the defenses of the nonfrivolous claims. *Patterson* v. *Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (suing a party who had no conceivable liability in a separate count of a multiple count complaint); *Frantz* v. *U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir. 1987) (assertion of baseless legal theory in multiple count antitrust complaint containing other counts with colorable legal theories).

Here, however, any award of damages, compensatory and punitive, would have turned largely upon what inferences a jury might draw from Johnson's actions in instigating the arrest warrant. Indeed, Johnson's liability for punitive damages depended upon an award of compensatory damages, *Valley Acceptance Corp.* v. *Glasby*, 230 Va. 422, 432, 337 S.E.2d 291, 297 (1985), and any such award would have had to bear a reasonable relation to the award of compensatory damages. *Philip Morris Inc.* v. *Emerson*, 235 Va. 380, 414, 368 S.E.2d 268, 287 (1988).

Here, the elements of Montecalvo's claim for compensatory damages are subsumed in his claim for punitive damages. Additionally, the sanction requested and imposed was an award of attorneys' fees. Therefore, Johnson's attorneys' time spent in defending the punitive damage claim should have been segregated and the sanction based only on the time taken in defending that claim. Although the trial court did not award the full amount of the attorneys' fees claimed, it based its award upon a projection of the time Johnson's attorneys spent in defending the entire case. In doing so, it based its conclusion upon an erroneous application of the law and thereby abused its discretion.

We further are of opinion that any effort to segregate the additional expense and anguish occasioned by Oxenham's continued assertion of a frivolous claim for punitive damages would impose additional and unnecessary burdens upon Johnson and the trial court. Under these circumstances, we will reverse the trial court's sanction of the payment of attorneys' fees and enter final judgment for Oxenham on that issue.

*Reversed and final judgment.*

SENIOR JUSTICE POFF, with whom JUSTICE RUSSELL and JUSTICE HASSELL join, dissenting.

Because I cannot agree that the trial court abused its discretion, I must dissent.

The resolution of the issue raised in this case requires a *thorough* comparison of the facts as alleged in the motion for judgment, as revealed in pretrial proceedings, and as developed in sworn testimony at trial. The motion for judgment alleged that Montecalvo "rented out rooms to boarders." Johnson, "a licensing inspector for the Virginia Department of Social Services, presented herself at the plaintiff's residence . . . and requested permission to enter and inspect the premises." Montecalvo refused permission unless "the defendant present[ed] a valid search warrant". A magistrate, "[a]t the initiative of the defendant . . . issued a search warrant . . . and an arrest warrant for the plaintiff for interfering with the defendant in the performance of her duties."[1] The arrest warrant "was so totally lacking in probable cause as to infer a spirit of malice." After hearing evidence at the criminal trial "consisting entirely of the testimony of the defendant", the judge "struck the Commonwealth's evidence and dismissed the criminal charges". The motion for judgment demanded compensatory and punitive damages "[d]ue to the malicious prosecution . . . set on foot by the defendant".

The record of the pretrial proceedings shows that Johnson, in a memorandum of law filed in support of her demurrer and motion for summary judgment, stated that she "did not ask for the issuance of the arrest warrant", that she "assumed they had simply gotten a search warrant", and that she "was surprised when Officer Stachura executed the arrest warrant." In that memorandum, Johnson averred that Oliver Norrell, an assistant Commonwealth's Attorney, "will testify that the inspectors sought his assistance in securing a search warrant, and that they never mentioned the need for an arrest warrant". The affidavit in support of the search warrant, attached as an exhibit to Johnson's memorandum of law, stated that Montecalvo had "acknowledged . . . that he was operating a home for Adults without the required license". Although Johnson, Gestwick, and William Davidson, a zoning officer, were named (in that order) as those who had heard the con-

---

[1] Code § 63.1-182 provides in part:
Any person who interferes with any authorized agent of the Commissioner in the discharge of his duties under this [licensing] article, or . . . any person who engages in the conduct of a home for adults without first obtaining a license . . . shall be guilty of a misdemeanor.

fession, the affidavit was executed, not by Johnson but by Barbara Gestwick.

Martha Parrish, the assistant Attorney General who represented Johnson in pre-trial proceedings, filed an affidavit declaring that "[o]n at least two occasions during the motions stage of this case, I advised counsel for the plaintiff that Ms. Johnson had no role in instigating the prosecution of the plaintiff. One of these occasions was immediately following our oral argument on the defendant's demurrer or in the alternative motion for summary judgment."

On March 6, 1989, Oxenham filed a memorandum of law in opposition to the demurrer and motion. Reaffirming allegations made in the motion for judgment filed four months earlier, Oxenham insisted that it was Johnson who "obtained a search warrant"; that Johnson "had no reasonable grounds to institute these criminal proceedings"; and that "[t]he facts before the Court clearly show that the . . . prosecution for interfering with [Johnson] was 'set on foot' by [Johnson]."

On May 3, 1989, Oxenham signed "Plaintiff's Memorandum in Opposition to Defendant's Plea of Sovereign Immunity and Motion to Strike Punitive Damages". Consistent with the allegations made in the Motion for Judgment, the memorandum asserted that Johnson had "committed the intentional tort of malicious prosecution" and had "acted without regard to the plaintiff's legal rights".

In answers signed May 15, 1989 to interrogatories posed by Johnson, the plaintiff said that Johnson "acted without regard for the plaintiff's constitutional rights." Explaining his allegation that Johnson was the person who initiated the arrest warrant, he said that "[t]he arrest warrant was issued by the magistrate after the defendant complained to the magistrate" and "[t]he defendant's name appears on the warrant as the complainant."

In her grounds of defense, filed May 18, 1989, Johnson repeated her statement that "she did not in any way initiate the arrest warrant . . . and had no knowledge of the obstruction of justice charge". In answer to an interrogatory propounded by Montecalvo whether "anyone from the Office of the Richmond Commonwealth's Attorney or the Richmond Bureau of Police contacted [her] prior to the plaintiff's [criminal] hearing and discussed [her] testimony", Johnson replied that no one had con-

tacted her and that she had testified because she was "under subpoena."

In a pretrial deposition taken by Johnson, Montecalvo testified that he had never held any conversation with Johnson; that it was Barbara Gestwick, Johnson's superior in the department, with whom he had talked about the search; and that he had not felt "harassed" by Johnson and had no reason to believe she bore him any ill will.

The trial court overruled Johnson's demurrer, special pleas, and motion for summary judgment and seated a jury for trial of the malicious-prosecution suit. The evidence adduced at that trial is relevant to the sanctions issue before this Court.

The plaintiff's evidence consisted of Montecalvo's testimony, that of Johnson, and the two warrants admitted as exhibits. Montecalvo testified that Gestwick, in company with Johnson and Davidson, came to his residence on June 8, 1988. Gestwick requested permission to inspect his home. After conferring by telephone with Oxenham, his attorney, Montecalvo told Gestwick that they could not enter his home without a search warrant. The three inspectors left and returned later with two police officers. Officer Stachura served both a search warrant and an arrest warrant, and the inspectors searched the home. At the criminal trial, Montecalvo pled guilty to the charge of operating a home for adults without a license. The charge of interfering with the discharge of official duties was dismissed. Asked on cross-examination if he had been "harassed in any way by Virginia Johnson" and if he had "exchanged any words with her at all", Montecalvo replied, "No, sir; just Ms. Gestwick."

Johnson, called by Montecalvo as an adverse witness, testified that she had accompanied Gestwick and Davidson on the visit to Montecalvo's residence; that "Ms. Gestwick and Mr. Montecalvo had the conversation" about the request to search; that she attended the meeting at the magistrate's office when Gestwick executed the affidavit for the search warrant; that she, Johnson, "had no correspondence or conversation with the magistrate whatsoever"; and that she did not know that an arrest warrant had been issued until it was served. Explaining why her name appeared on the face of the arrest warrant as the complaining witness, Johnson said she assumed that the magistrate "took my name from the search warrant affidavit because it was first in a series of names."

Montecalvo rested, and Johnson moved to strike his evidence. Commenting for the record, the trial judge said, "I can't comprehend how the jury can come back with a plaintiff's verdict, but let's see what they do." Accordingly, pursuant to the "the court's policy against striking the evidence in order to preserve a full record on appeal", the court took Johnson's motion under advisement.

Johnson then called Gestwick to the stand. Gestwick testified that it was she, and not Johnson, who had talked with Montecalvo; that she had contacted the magistrate and consulted with an assistant Commonwealth's Attorney and an assistant Attorney General about a search warrant; that she had executed the affidavit for the search warrant; and that she had never requested or discussed an arrest warrant and was unaware that one had been issued until Officer Stachura served it. Joi Jeter, the assistant Attorney General mentioned by Gestwick, confirmed her testimony that their conversation concerned only the need for a search warrant and that no mention had been made of an arrest warrant.

At the conclusion of all the evidence, Johnson renewed her motion to strike, and the trial court, reaffirming its previous ruling, submitted the case to the jury. As the court noted for the record, the jury "required just ten minutes to return a verdict for the defendant." Invoking Code § 8.01-271.1, Johnson filed a motion for sanctions against Oxenham and Montecalvo. In a letter opinion, the court approved the motion as to Oxenham.

The court rested its decision upon two findings of violations of the duty imposed upon an attorney by the statute: (1) that Oxenham failed to make "reasonable inquiry" to determine whether the civil suit against Johnson was "well-grounded in fact"; and (2) that the suit was brought and maintained "for an improper purpose".

The court explained the reason for its first finding. Although the court believed that, initially, Oxenham "was entitled to rely on the information contained in the warrant . . . as a basis for the preparation and filing of the motion for judgment", the court concluded that Oxenham violated his duty under the statute when he failed to conduct an investigation which would have disclosed that none of the prospective witnesses would testify at trial in support of the facts alleged in the pleading. Specifically, the court found:

Plaintiff conducted no investigation nor discovery after the filing of the motion for judgment, notwithstanding being repeatedly told by defense counsel that the defendant was not the source of the issuance of the arrest warrant, that she merely accompanied her supervisor to the magistrate's office . . . . At trial there was no evidence to the contrary. In fact, all the evidence was that defendant had nothing to do with the issuance of either warrant.

In explanation of its second finding, the court said:

To file a motion for judgment and do nothing that was reasonably calculated to produce a favorable result leads the court to the inevitable conclusion that the purpose of filing the motion for judgment was not to prevail on the merits but to harass the defendant.

Basing its decision upon these findings, the court entered final judgment confirming the jury's verdict and imposing a monetary sanction upon Oxenham.

I agree with the majority that, contrary to Oxenham's theory, the abuse of discretion standard is the appropriate standard of appellate review in a sanctions case. Oxenham's chief complaint in this Court is that the trial court erred in construing Code § 8.01-271.1 to impose a "continuing duty" upon an attorney or a litigant who signs the initial pleading. As he points out, courts in the federal jurisdiction appear to be deeply divided over the question whether Rule 11 of the Federal Rules of Civil Procedure[2] contemplates a continuing duty. *See, e.g., Blue* v. *Marsh,* 914 F.2d 525 (4th Cir. 1990) (finding continuing duty); *Thomas* v. *Capital Sec. Services,* 836 F.2d 866 (5th Cir. 1988) (en banc) (finding no continuing duty); *Herron* v. *Jupiter Transportation Co.,* 858 F.2d 332 (6th Cir. 1988) (finding continuing duty); *Golden Eagle Distrib. Corp.* v. *Burroughs Corp.* 801 F.2d 1531, 1536 (9th Cir. 1986) (finding no continuing duty); *see also Christiansburg Garment Co.* v. *EEOC,* 434 U.S. 412, 422 (1978) (fees assessed against plaintiff under 42 U.S.C. § 1988 when "claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so.").

---

[2] Rule 11 is substantially identical to Code § 8.01-271.1.

As I read these opinions, the appearance of diversity is largely a matter of semantics, resulting primarily from the disparate use of the term "continuing duty". I do not disagree with the statement Oxenham quotes from *Pantry Queen Foods* v. *Lifeschultz Fast Freight*, 809 F.2d 451, 454 (7th Cir. 1987) (finding no continuing duty) that nothing in Rule 11 "requires a lawyer to . . . update his pleading in light of any new findings." Our statute imposes no "continuing duty" as the term is used in that sense; nothing in Code § 8.01-271.1 requires an attorney to "update" the initial pleading. That is not to say, however, that a lawyer has no duty extending beyond the filing of the initial pleading.

Although his duty to list his address applies only to "the first pleading filed", his duty to make a "reasonable inquiry" does not stop at that point. In the express language of the statute, that duty continues to the signing and filing of "[e]very pleading, written motion, and other paper" and to the making of "[a]n oral motion", to the end that the lawyer certify, advisedly and creditably, that each such pleading, paper, or motion is "well-grounded in fact". *See Thomas*, 836 F.2d at 875 ("Rule 11 . . . requires that each filing reflect a reasonable inquiry.").

Even if Oxenham's examination of the arrest warrant bearing Johnson's name as the complainant constituted an inquiry sufficiently reasonable to avoid sanctions for the signing and filing of the motion for judgment[3], the record of the proceedings conducted thereafter reflects no such inquiry before the signing of the several "papers" Oxenham drafted and filed with the court. During the course of those proceedings, Oxenham was advised, verbally and in writing, unequivocally and repeatedly, that Johnson was not the person who obtained the search warrant and instigated the criminal prosecution. While, as the majority says, he was not required

---

[3] It is difficult to see, however, how any inference of malice, one of the essential elements of a malicious prosecution suit, could be gleaned from the face of the arrest warrant, especially when Oxenham knew, or should have learned, that his own client did not believe that Johnson bore him any ill will.

The majority holds that Oxenham was relieved of his duty to conduct a reasonable inquiry on the issue of legal malice by our decision in *Giant of Virginia, Inc.* v. *Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 276 (1967), where we said that malice "may be inferred from the want of probable cause." *Giant* went on to say that the existence of malice must be determined under "*all the circumstances* of the case. The circumstances *must warrant* the inference . . . ." *Id.* (citations omitted) (emphasis added). Oxenham conducted no investigation into "the circumstances of the case" and, hence, the inference of malice is not warranted.

to accept as truth what opposing counsel, Gestwick, and Johnson had told him, the statute required him, before each new filing, to conduct a reasonable inquiry to determine whether the facts basic to the cause of action asserted were well-grounded. Yet, failing for six months awaiting trial to depose, or simply to interview, any of the several persons present in the magistrate's office when the arrest warrant was issued, Oxenham persisted in signing and filing papers for the record, reaffirming allegations made in the original pleading. I cannot endorse the majority's conclusion that this constituted a "reasonable inquiry".

Because it was not clearly erroneous, we should uphold the trial court's first finding of fact. The question then occurs whether the record supports the court's finding that Oxenham filed and persisted in litigating the malicious-prosecution suit "for an improper purpose", that is, "not to prevail on the merits but to harass the defendant."

The majority overrules that finding because the record "contains no evidence of threats or expressions of ill will on Oxenham's part." However, ill will is not the only reason a person might have to harass a defendant. It is an unfortunate fact of life that many defendants, wanting to escape the inherently vexatious nature of litigation, will settle frivolous claims for their "nuisance value", *i.e.*, an amount approximating the costs necessary to defend against the claim. Although the filing and litigation of such claims once may have been acceptable practice, that practice now is sanctionable under Code § 8.01-271.1.

The statute authorizes courts to impose sanctions whenever a "pleading, motion, or other paper" is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." "If a complaint is not filed to vindicate rights in court, its purpose must be improper." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990). As the trial court said, the only proper purpose of filing papers and making motions in court "would be to have the trier of fact vindicate [the party's] position; to support his assertion of rights. How could any reasonable person assume to accomplish this purpose without some investigation into the facts?"

Applying the same standard of review, this Court should affirm the trial court's second finding of fact.

Finally, Oxenham contends that "[e]ven if sanctions were appropriate, the trial judge failed to consider alternatives to mone-

tary sanctions." Pursuing the point, he says that "the public rebuke which he has received [on account of news reports] is more than adequate to deter him from such conduct in the future". And, he continues, even if monetary sanctions were justified, they were excessive in this case. I find no merit in these arguments.

Manifestly, the public policy goal of sanctions statutes is to expedite final adjudication of legitimate causes of actions by eliminating frivolous litigation from the overburdened dockets of *nisi prius* and appellate courts. The secondary goal, rooted in equity, is to compensate victims of frivolous claims and spurious defenses for the time, trouble, trauma, and expense suffered on account of such vexatious practices. These goals can be achieved only by the imposition of sanctions sufficient to deter such practices. *See Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. ___, 110 S.Ct. 2447, 2454 (1990).

Code § 8.01-271.1 provides that, in the event of a "violation of this rule, the court . . . shall impose . . . an appropriate sanction, which may include . . . the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee." Thus, our statute vests a trial court with broad discretion; what kind and what quantity of sanctions may be appropriate depends upon the circumstances in each case.

The trial judge made a balanced analysis of the sanctions issue. With measured restraint, he remarked that sanctions are "not favored by this court [and] are never to be imposed lightly." Although the evidence showed that $10,383 was a "reasonable estimate of the economic losses caused by the filing and prosecution of this frivolous suit", the trial judge, noting that Oxenham "enjoys a good reputation for professional competence" and that he had not "previously engaged in practices such as found here", concluded that "a sanction of $4,500 would meet the purposes of the law in serving as a deterrent to [Oxenham] and others from filing frivolous suits."

Considering the facts and circumstances disclosed by the record of the pretrial proceedings and confirmed by the evidence at trial, and applying the standard of review applicable here, I would hold

that the trial court did not abuse its discretion in imposing this sanction upon Oxenham and affirm the judgment.[4]

---

[4] While I concur fully with the majority's determination that the punitive-damage claim was frivolous from its inception, I can find no precedent for the refusal to remand this case for further proceedings on that issue. Although the majority's concern for the "unnecessary burdens upon Johnson and the trial court" is commendable, I believe any additional burdens would be gladly borne by both. Furthermore, even if the trial court found the task of apportioning attorney's fees between frivolous and non-frivolous claims to be unworkable, a public censure or other "appropriate sanction" could be imposed to "give effect to the [statute's] central goal of deterrence." *Cooter & Gell*, 496 U.S. at ___, 110 S.Ct. at 2454.