## CIRCUIT COURT OF FAIRFAX COUNTY

Irena Mickle

v.

Largent's Great Falls Stables, Inc.

### Case No. (Law) 121278

BY JUDGE ROSEMARIE ANNUNZIATA

June 22, 1994

The matter currently before the Court is plaintiff's post-trial motion for costs and for sanctions pursuant to Va. Code § 8.01-271.1 and defendant's counter-motion for costs. The plaintiff in this case, Irena Mickle, is the owner of a horse named Macondo which the plaintiff brought to Virginia in 1992 from Chile. Macondo was trained for international-level dressage competition[1] and, before the events relevant to this case, had qualified to compete in the Pan American Games as an entry of the Chilean Equestrian Team.

The Motion for Judgment alleged that when Macondo arrived at defendant's boarding facility on February 24, 1992, he was in good health and was worth approximately $35,000.00. Plaintiff further alleged that on March 6, 1992, defendant's employees, in contravention of plaintiff's specific instructions, turned Macondo out alone into a muddy pasture with

---

[1] Dressage is a competitive equestrian event in which the rider guides the horse through a series of complex maneuvers by slight movements of the hands, legs, and weight. *Webster's II New Riverside University Dictionary 405 (1984)*.

improper equipment, and as a result of these actions, Macondo suffered permanent injury to his right hock.[2] The damage to Macondo's hock has rendered him unfit for use.

In its Answer to the Motion for Judgment, defendant denied plaintiff had given specific instructions with regard to Macondo's care and alleged that the horse suffered from numerous pre-existing injuries that rendered the horse unsound or lame prior to his arrival in Virginia, significantly reducing his value. At trial, the defendant attempted to establish Macondo's pre-existing lameness through the testimony of a number of expert as well as lay witnesses. At the conclusion of the five-day trial in December, 1993, the jury returned a verdict in the plaintiff's favor of $19,000.00.

The following procedural facts preceding the trial are relevant to the issue of sanctions pending before the Court. In July of 1993, pursuant to Rule 4:1(b)(4)(A), plaintiff served on defendant an interrogatory seeking the names and expected testimony of defendant's expert witnesses. Defendant responded in September, 1993, listing twelve expert witnesses whom the defendant reserved the right to call at trial and summarizing their expected testimony. Plaintiff subsequently filed a motion to limit the number of expert witnesses, which was granted, limiting the number to four.

In November, 1993, defendant served the plaintiff with a Notice of *de bene esse* Deposition, to be taken before a court reporter at the American Embassy in Chile. The depositions of six witnesses, Dr. Carlos Sandoval, Sharon Matthews, Victor Contador, Sylvia Huit, Claudio Almarza, and Hernan Fagnilli were noticed. Sandoval, Matthews, Contador, and Huit were listed as experts in defendant's interrogatory answer and their expected testimony given. Due to the nature of the testimony as disclosed in the interrogatory answer, plaintiff contends that she was compelled to have her attorney attend the depositions. Huit and Fagnilli failed to appear for their depositions, while the testimony of Matthews, Contador, and Sandoval differed markedly from that which was disclosed in the interrogatory answer.

The plaintiff claims that had she known the true nature of the witnesses' testimony, she would not have incurred the expense of preparing and sending her attorney to Chile to attend the depositions. Accordingly, the plaintiff seeks an award of costs and sanctions for sums expended by her

---

[2] The hock is a weight-bearing tarsal joint in the horse's hind leg. *Webster's II New Riverside University Dictionary 585 (1984).*

attorney on the trip to Chile to attend the depositions, as well as for the time expended in preparation for the depositions.[3] She also seeks reimbursement for attorney's fees incurred in her successful motion to limit the number of expert witnesses. Finally, plaintiff seeks reimbursement for court costs and for the costs incurred by an out-of-state witness who testified at the trial.

In opposition, counsel for the defendant argued at the February hearing on the motions that he had a reasonable, good-faith basis for the information provided to the plaintiff in the answer to the interrogatory. Specifically, counsel for the defendant submitted to the Court a video cassette, recorded by his client, containing taped interviews of the witnesses in question. Defendant's counsel stated that the content of the taped interviews formed the basis for the summary of the experts' expected trial testimony he provided in the answers to plaintiff's interrogatories. There is no evidence that the defendant's counsel personally spoke to any of the witnesses listed in his interrogatory answer. The Court accepted the video cassette for review.[4]

I address first the testimony of Dr. Carlos Sandoval, a veterinarian practicing in Santiago, Chile, and one of the expert witnesses designated to be called in the trial of this case. As the horse's attending veterinarian during the seven or eight years directly preceding the injury, Dr. Sandoval's testimony was crucial to establishing the horse's prior physical condition and, thus, its value. The expected medical testimony was the crux of the defendant's contention that the plaintiff's horse was not damaged as a result of any injuries sustained while stabled by the defendants. According to the interrogatory answer, Dr. Sandoval was to testify that the horse had pre-existing chronic arthritis in its right hock, the joint which the plaintiff alleged had been injured by defendant's negligence. He was to further testify that this condition required "infiltrations" of the hock and that the horse suffered from a number of other ailments which combined to render the horse lame for extended periods of time. *See* Exhibit A. Such testi-

---

[3] In her motion, the plaintiff also sought reimbursement for attending the deposition of a veterinarian, Dr. John Mayo, in Fairfax, Virginia. This portion of the motion was withdrawn by plaintiff's counsel at the hearing on the motion.

[4] The Defendant's Supplemental Interrogatory Answer is attached as Exhibit A. Since no written transcript of the taped interviews or the videotaped *de bene esse* depositions was provided to the Court, any reference to the tapes stems from the Court's review of the tapes themselves.

mony was to be offered to counter plaintiff's evidence that the horse was sound before being stabled at defendant's facility.

Both in the taped interview of Dr. Sandoval that purportedly furnished the basis for the interrogatory answer, and in his *de bene esse* deposition trial testimony, Dr. Sandoval made statements that were flatly inconsistent with the summary given in response to plaintiff's interrogatory.[5] It appears counsel relied for his summary of Dr. Sandoval's expected testimony on the interview of Sharon Matthews. Ms. Matthews, an owner and manager of a stable in Chile and not a doctor of veterinary medicine, simply relayed in her taped interview with the defendant her understanding of Dr. Sandoval's medical diagnoses. Her statements regarding the horse's medical condition were, of course, hearsay, and virtually none of them was confirmed by Dr. Sandoval either in the taped interview or in his *de bene esse* deposition. Rather, although Dr. Sandoval recalled some arthritis existed in the horse, he could not identify the joint affected. He did not state as proffered that a pre-existing arthritic condition prevented the horse from competing; nor did he state that he had performed "infiltrations" of the hock in question. The only treatment identified by Dr. Sandoval as having been administered by him consisted of intramuscular cortisone shots. However, these shots were given over the pastern, an anatomic part not implicated in this case and which had no bearing on the issues to be resolved.[6] Finally, Dr. Sandoval stated that the horse only had minor problems in his hind legs which had never prevented him from competing.

The testimony of two other witnesses named in the interrogatory answer, Sharon Matthews and Victor Contador, is also at issue in the plaintiff's motion for sanctions. Ms. Matthews and Mr. Contador were co-owners of the boarding facility in Chile where the horse had been stabled prior to his arrival in Virginia. According to the interrogatory answer, they were to testify that they had first-hand knowledge of the horse's training level, of his veterinarian/medical problems, and his value, which they would place at around $5,000.00. *See* Exhibit A. They were further represented as witnesses who would testify that the horse could not have suf-

---

[5] Of course, it is the interrogatory response upon which plaintiff relied in determining the need to attend the *de bene esse* deposition in Chile; the latter testimony corroborates the plaintiff's contention that defense counsel's answer to her interrogatory was without any basis in fact.

[6] The pastern is a part of the horse's leg located just above the hoof. *Webster's II New Riverside University Dictionary 860 (1984).*

fered a traumatic injury at the defendant's facility on the date in question because it would have been observable when the horse walked in from the paddock where it was allegedly injured. They were to further state that the horse was a known stall-kicker, the most common cause of hock problems, and that the horse had continuous problems with lameness, arthritis of the right hock, and bone cysts. *See* Exhibit A.

Inquiry by defense counsel would have revealed that Mr. Contador was not trained in veterinary medicine and therefore could not be qualified to give testimony regarding the horse's medical/veterinarian problems. That this witness lacked such qualifications is clear from the review of the taped interview on which defense counsel said he relied. It was also clear from the taped interview that the purposed basis for Mr. Contador's valuation testimony could not be established by the expected evidence in the case. For example, Mr. Contador's opinion as to the horse's value before the injury sustained at defendant's facility was premised on his belief that a bone spur existed in the horse's front leg. However, being unqualified, he could not establish the existence of such an injury, and no other competent medical witness was to be presented in the case to establish such an injury.

The source of this medical fact was apparently, again, the hearsay testimony of Ms. Matthews, recorded in the videotaped interview in which she related her understanding of Dr. Sandoval's diagnoses. Her contention remained unconfirmed both pre-trial and at trial.

In addition, many of counsel's other assertions regarding the basis of Mr. Contador's expert valuation testimony were not reflected in his taped interview, and they were not testified to at trial. Among other things, Mr. Contador could not testify, as proffered, that he had first-hand knowledge of the horse's training level or that the horse had continuous problems with lameness, arthritis of the right rear hock, and bone cysts, preventing him from becoming a first class dressage horse. He did not testify that the horse was a stall kicker. Nor did he testify as proffered, either on tape or at trial, that the defendants had exercised reasonable care in their management of the horse and that there could not have been a traumatic injury on the date in question, as it would have been observable when the horse was being led in from the paddock.

As to defense counsel's representations regarding Ms. Matthews' expected testimony, as noted earlier, her statements were almost exclusively the hearsay statements of Dr. Sandoval's purported diagnoses and treatment. She further declined to place a value on the horse in the taped

interview, contrary to defense counsel's proffer. While she stated the horse had lameness in the right hock in the video interview, the remaining asserted expected testimony as summarized earlier was not developed and could not possibly have formed the basis of defense counsel's answer to plaintiff's 4:1(b)(4)(A) interrogatory.

I find that defense counsel's conduct violates Virginia Code § 8.01-271.1 which provides that counsel's signature on the interrogatory answer constituted a certificate by him that he had conducted a reasonable inquiry into the factual basis of the expected testimony and that the pleading was well-grounded in fact and not interposed for an improper purpose. *See, Oxenham v. Johnson*, 241 Va. 281, 285-288 (1991). The summary of Dr. Sandoval's testimony given in response to plaintiff's interrogatory question bears little if any relationship to the content of the taped interview conducted and recorded by defense counsel's client and upon which defense counsel said he relied in responding to the discovery. Under the facts of this case, it is clear that defense counsel failed to make any inquiry regarding the testimony of Dr. Sandoval. He never spoke to him directly, and his reliance without further inquiry on Ms. Matthews' reports of Dr. Sandoval's diagnoses and treatment is inexplicable and unwarranted, not only in light of the hearsay nature of the testimony, but also in light of Dr. Sandoval's taped interview in which he flatly contradicted Ms. Matthews' reports.

As to the two remaining witnesses, even assuming defense counsel's exclusive reliance on the taped interviews conducted by his client in answering the interrogatory as to them can be found to constitute reasonable inquiry, his answer misstates the facts developed in the interviews. Upon reasonable inquiry, defense counsel would have discovered, as established both by the taped interviews and by the trial testimony, that neither Ms. Matthews nor Mr. Contador would testify in accordance with the interrogatory answer provided to plaintiff. The only purpose served by filing such discovery answers in this case was to needlessly increase the costs of litigation. Accordingly, I impose sanctions on defendant's counsel in the amount of $3,500.00 to compensate the plaintiff for sums expended in preparation for and travel to the depositions of the individuals named as experts in the defendant's interrogatory answer.

I also award plaintiff her costs and fees of $582.20, incurred in bringing her motion to limit the number of expert witnesses to four. First, I find the naming of twelve defense experts in this case to be unreasonable. The nature of the issues to be litigated did not warrant such a response. Among

other things, I note that plaintiff only named three experts to testify in her case. Furthermore, as outlined above, at least four of the twelve named experts should not have been named as they could not give the testimony proffered in the interrogatory answer.

In addition to the discussion above, I note one further example of defense counsel's naming an expert without reasonable inquiry. There appears to be no basis for naming Dr. Umberto Fernandez as an expert witness in this case. Although his deposition was not ultimately noticed, Dr. Fernandez was identified in the interrogatory answer as one of the twelve experts. His testimony was to be identical to that of Dr. Sandoval. *See* Exhibit A. In the taped interview of Sharon Matthews, however, the defense was advised that it was unlikely that Dr. Fernandez had treated the horse, as he had suffered the amputation of one of his legs in an automobile accident some three years before the horse suffered any injury and had not been in Chile since. There was no attempt to determine the accuracy of the report or the extent of Dr. Fernandez's knowledge before naming him as one of the twelve defense experts for trial.

Finally, as the prevailing party in this litigation, I also award her costs of $131.00 for filing and process fees, pursuant to Va. Code §§ 14.1-178 and 14.1-198. I further award $117.60 under Va. Code § 14.1-190 as reimbursement for the attendance of Ms. Tony Massinople, an out-of-state witness, at the trial. Defendant's counter-motion for costs is denied.

### July 28, 1994

I am in receipt of Mr. Downey's letter dated July 7, 1994, in which he addresses the Court's award of sanctions pursuant to Va. Code § 8.01-271.1. In the letter, it is contended that the Circuit Court of Fairfax County lost jurisdiction to impose sanctions twenty-one days after judgment was entered in this case. The order in question was entered on February 18, 1994, and awarded damages in favor of the plaintiff, expressly reserving the issue of sanctions for a later hearing.

It is true that a final judgment order remains under the trial court's control for only twenty-one days after entry unless modified, vacated or suspended. *Smith v. Stanaway*, 242 Va. 286 (1991), and *Murray v. Hadid*, 238 Va. 722 (1989). It is also true that neither the mere filing of post-judgment motions nor the court's taking such motions under advisement is sufficient to toll or extend the running of the twenty-one day period. *See, e.g., School Board of Lynchburg v. Caudill Rowlett Scott*, 237 Va. 550 (1989), and *Harvey v. Telephone Co.*, 198 Va. 213 (1956).

Where, however, the court officially separates the motion for sanctions from the case in chief, the twenty-one day limit following entry of the judgment order is inapplicable. *Murray*, 238 Va. at 733. In this case, plaintiff's motion for costs and sanctions was separated from the case in chief, as reflected in the judgment order which expressly reserved determination of the motion.

With regard to the factual issues raised in the letter, counsel may be assured that I carefully considered all of the facts before me in ruling on the sanctions motion. Mr. Downey appears to address evidence that was not introduced at the hearing; such evidence is not properly before me and is thus beyond the permissible scope of consideration at this stage in the proceedings.

For the reasons stated above, the award of sanctions and costs stands as made.

October 31, 1994

On September 13, 1994, defendant Largent's Great Falls Stables, Inc., and its counsel, Richard L. Downey, Esq., filed their Notice of Appeal from the Court's order regarding costs and sanctions entered on August 15, 1994. Defendants then filed six transcripts and depositions as the record for the appeal in this case. The matter now before the Court is plaintiff's objections to the contents of the record as submitted by defendants.

Before addressing each of plaintiff's objections in turn, I first note that the basis for the sanctions motion in this case was defense counsel's failure to conduct a reasonable inquiry into the factual basis of an interrogatory answer containing expected expert witness testimony, in violation of Virginia Code § 8.01-271.1. At the hearing on the sanctions motion in February 1994, defense counsel submitted to the Court a video cassette containing pre-discovery interviews of the witnesses in question. These interviews allegedly supplied the good-faith, reasonable basis for the expected trial testimony of Dr. Carlos Sandoval, Sharon Matthews and Victor Contador, as summarized in defense counsel's interrogatory answer. After reviewing the video cassette and all other relevant factors, the Court imposed sanctions on defense counsel and awarded plaintiff her costs.

The first objection raised by the plaintiff is to the inclusion in the record of the transcript of four discovery depositions taken prior to the trial in this case. Virginia Supreme Court Rule 5:10(a)(6) states that the contents of the record on appeal include "any deposition and any discovery material . . . offered in evidence (whether admitted or rejected) at any proceed-

ing." The depositions of Margaret Johnson, Irena Mickle, Kathleen Drinkard and Bernardo Vergara were not offered in evidence at any proceeding in this case and cannot be included in the record on appeal. Plaintiff's objection to the inclusion of these four depositions is therefore sustained.

Plaintiff's next objection is to the inclusion of the deposition transcript of Stephen Johnson and the trial transcript of Dr. Paula Horne, and to the exclusion of the testimony of Dr. Carlos Sandoval. While portions of the transcript of Mr. Johnson were introduced into evidence by both the plaintiff and defendant, none of Mr. Johnson's deposition testimony nor Dr. Horne's trial testimony was ever identified by defendant or defense counsel as being a basis for determining whether "reasonable inquiry" into the factual basis of the expected testimony of Dr. Sandoval, Ms. Matthews or Mr. Contador was conducted by defense counsel. In contrast, the testimony of Dr. Sandoval himself is clearly relevant and was relied upon by the Court as part of the basis for its decision to award sanctions. Plaintiff's objection is therefore sustained and the trial transcript of Dr. Horne and the deposition of Mr. Johnson are to be removed from the record, and the transcript of Dr. Sandoval is to be included.

Finally, I note that, in addition to defendant's incorporating only selected portions of the trial transcript into the record for appeal and excluding other relevant portions, there are additional omissions which make the record inaccurate. In order to be deemed complete, the record must reflect those matters considered by the Court in determining the issue of sanctions. In addition to the materials filed to which no objection was made, and in addition to the transcript of the *de bene esse* deposition testimony of Dr. Sandoval, together with the additional translation provided at trial, the record must include the *de bene esse* deposition testimony of Ms. Matthews and Mr. Contador, and the videotape or a transcript of the pre-discovery interviews conducted by the defendant of these same people. Finally, a transcript of the evidentiary hearing conducted on the sanctions motion in February 1994 is an indispensable part of the record. I note that although a court reporter was not present at this hearing, Rule 5:11 provides counsel with the option of preparing a written statement of the facts of this proceeding. It appears that no such statement was prepared. In light of these omissions, the Court certifies, pursuant to the mandates of Virginia Supreme Court Rule 5:11(d)(4), that the record for appeal is incomplete.