# CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Department of Family Services

v.

Larry Neidig

May 14, 1997

Case No. (Chancery) 145239

BY JUDGE STANLEY P. KLEIN

Complainant Fairfax County Department of Family Services (Fairfax County) moves the Court for a protective order prohibiting Respondent Larry Neidig from conducting two depositions and subpoenaing certain documents in support of his Motion for Sanctions pursuant to Virginia Code § 8.01-271.1. The Court has considered the memoranda of the parties, the applicable authorities, and the arguments of counsel. For the reasons set out herein, the Motion for Protective Order is granted.

On May 12, 1995, Fairfax County filed a petition in the Fairfax County Juvenile and Domestic Relations Court alleging that Neidig had sexually abused his two daughters. The children were removed from Neidig's home pursuant to an Emergency Order of the Juvenile Court.

On April 26, 1996, while the petition was still pending in the Juvenile Court, Theresa Belcher, the social worker whose affidavit supported the petition, and another woman, Nancy Bond, took the girls to Norfolk to be examined by Dr. John de Triquet for evidence of sexual abuse. Although the parties differ significantly in their recitations of what Dr. de Triquet subsequently reported to Cynthia Tianti, an Assistant Fairfax County Attorney, they agree that Dr. de Triquet advised her that there existed no

physical signs of genital trauma to the children.[1] Neidig apparently did not know about the examinations of the children by Dr. de Triquet until January 23, 1997.

On July 16, 1996, counsel for the parties endorsed a Consent Order in the Juvenile Court wherein the parties stipulated that if a trial took place on the petition, the evidence would be sufficient to prove that the children were abused within the meaning of Virginia Code § 16.1-228(4). The order further reflected that Neidig maintained his innocence of the charges.[2] It appears that the Consent Order was presented to the Juvenile Court to avoid a trial in that court so that the parties could obtain an early trial date on the inevitable *de novo* appeal to the Circuit Court.

An appeal in fact ensued in Circuit Court, where no pre-trial discovery was propounded by counsel for Neidig. Trial was conducted before Judge Gerald Bruce Lee on December 11, 12, 16, 17, and 18, 1996. Judge Lee rendered a decision in favor of Neidig and granted him custody of his children by an order entered January 3, 1997. That order was suspended pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia.

On January 23, 1997, counsel for Neidig learned of the physical examinations in Norfolk, and on January 28, 1997, Neidig filed his Motion for Sanctions. In his motion, Neidig asserts that the Office of the County Attorney violated Va. Code § 8.01-271.1 by moving forward with the abuse petition and "suppressing" the findings of Dr. de Triquet. On February 5, 1997, Fairfax County filed an Opposition to Neidig's Motion for Sanctions which contained affidavits from Ms. Tianti and Dr. de Triquet. Counsel for Neidig then noticed the depositions of Ms. Belcher and Ms. Tianti and filed a subpoena duces tecum directed to the girls' psychologist. On February 13, 1997, Fairfax County filed the instant Motion for Protective Order seeking to prohibit the depositions and the quashing of the subpoena duces tecum.[3]

A hearing was held on the Motion for Protective Order on February 28, 1997. Counsel for Neidig argued that the pleading which forms the basis for the sanctions request is the July 16, 1996, Consent Order entered by the

---

[1] According to an affidavit submitted by Ms. Tianti, Dr. de Triquet also told her that "I know they were abused" and "something happened here."

[2] Neidig was also criminally prosecuted for the alleged abuse of one of the children and was found not guilty.

[3] Fairfax County filed a Cross-Motion for Sanctions on February 25, 1997, alleging that Neidig's Motion for Sanctions itself violated Code § 8.01-271.1.

Juvenile Court. This Court temporarily canceled the depositions[4] subject to potential reconsideration upon receipt of a brief from counsel for Neidig setting forth the legal and factual basis for allowing such discovery in this case at this time. Neidig's brief and an Opposition thereto have now been received by the Court.

The issue of the propriety of initiating discovery in support of a Motion for Sanctions under Va. Code § 8.01-271.1 is apparently an issue of first impression in the Commonwealth. As Virginia's sanctions statute is modeled after Rule 11 of the Federal Rules of Civil Procedure, authority interpreting the Federal Rule is instructive. *Cf. Oxenham v. Johnson*, 241 Va. 281, 286-88 (1991) (Virginia Supreme Court relies on federal decisions interpreting Rule 11 in determining scope of § 8.01-271.1).

In 1983, Rule 11 was amended to make sanctions mandatory and to expand the scope of the rule to cover not only "pleadings" but also a "motion or other paper." The Advisory Committee Notes from that process urged courts to limit the scope of sanction proceedings to the record and allow discovery only in "extraordinary circumstances" so that the costs attendant to collateral litigation over sanctions would not outweigh the benefits intended by Rule 11. *See* Fed. R. Civ. P. 11, Advisory Committee Notes.

Notwithstanding this Court's request for authority supporting discovery in sanctions litigation, Neidig has cited no case wherein such discovery was approved by any federal court. To the contrary, in *Indianapolis Colts v. Mayor and City Council*, 775 F.2d 177 (7th Cir. 1985), the Seventh Circuit relied on the Advisory Committee Notes to Rule 11 in affirming the District Court's refusal to allow such discovery. The Court reasoned that "[w]e intend to end this vexatious litigation rather than encourage parties to pursue secondary and patently frivolous litigation over attorney's fees." *Id.* at 183; *see also, Borowski v. DePuy, Inc.*, 876 F.2d 1339, 1341 (7th Cir. 1989) (Seventh Circuit reaffirms "only in extraordinary circumstances" test for allowing discovery in Rule 11 context).

Although the Virginia Supreme Court has yet to address this specific issue, the Court's decisions to date concerning the scope of Virginia Code § 8.01-271.1 evidence a reluctance to interpret the statute broadly. *See Tullidge v. Board of Supervisors of Augusta County*, 239 Va. 611 (1990) (award of sanctions by trial court reversed); *County of Prince William v. Rau*, 239 Va. 616 (1990) (award of sanctions by trial court reversed); *Oxenham v. Johnson*,

---

[4] The Court allowed the subpoena duces tecum to be served on the children's psychologist subject to a protective order of non-disclosure as Neidig is the legal custodian of the children and, therefore, has a legal right to these records.

241 Va. 281 (1991) (award of sanctions by trial court reversed); *Nedrich v. Jones*, 245 Va. 465 (1995) (award of sanctions by trial court on eight of ten counts reversed); *Jordan v. Clay's Rest Home*, 253 Va. 198 (1997) (award of sanctions by trial court reversed); *but see, Lake v. Northern Va. Women's Medical Ctr., Inc.*, 253 Va. 255 (1997) (case remanded in part for reconsideration of denial of award of sanctions).

In *Oxenham v. Johnson*, the Supreme Court expressed the same concern shared by the Advisory Committee to Rule 11 and the Seventh Circuit in *Indianapolis Colts*, when it stated "courts should take care that the litigation of a sanction issue does not itself defeat one purpose of Code § 8.01-271.1, that of reducing the volume of unnecessary litigation." *Oxenham*, 241 Va. at 286. This Court finds the logic underlying the "extraordinary circumstances" test recommended by the Advisory Committee and adopted by the Seventh Circuit persuasive and hereby adopts that test in this case. It is therefore within that analytical framework that this Court must examine Neidig's request to depose Tianti and Belcher.

On brief and in oral argument, counsel for Neidig principally argued that the County Attorney's Office violated ethical standards[5] in withholding Dr. de Triquet's findings from them until the underlying litigation had been concluded. However, they cited no authority in support of their argument that an alleged violation of a lawyer's ethical obligations can, of itself, constitute a basis for sanctions under Rule 11, § 8.01-271.1, and their progeny, and a reasonable interpretation of Virginia's sanctions statute belies any such claim. Sanctions under the statute can be premised solely upon an *affirmative act* of a party or attorney.

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Va. Code § 8.01-271.1. The mere withholding of information in the absence of a discovery request seeking its disclosure does not provide a basis for the

---

[5] Specifically, Ethical Consideration 8-11 relating to government lawyers.

imposition of sanctions under § 8.01-271.1, even if a lawyer may have been ethically required to disclose it.

Neidig further argues that the "litigation was continued after the medical expert Complainant sought did not give the expected result."[6] He contends that courts in the Eastern District of Virginia and the Fourth Circuit have found that there is a continuing duty on litigants to make the inquiries required under Rule 11 and § 8.01-271.1 and that facts which thereafter come to the attention of counsel cannot be ignored. The cases upon which Neidig relies are inapposite. The Fourth Circuit, in fact, has rejected the "continuing duty" theory.

> Moreover, the advisory committee note to the amended rule states that the signer's conduct is to be judged *as of the time the pleading or other paper is signed.* Fed. R. Civ. P. 11 Advisory Committee Note. It is difficult to imagine why this comment would be made if the rule *were meant to impose a continuing obligation* on the attorney.

*Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 (4th Cir. 1991) (emphasis supplied). In addition, the Virginia Supreme Court has also rejected any "continuing duty" concept.

> Although we agree with Oxenham's contention that Code § 8.01-271.1 imposes no continuing duty upon a lawyer to "update his pleadings in light of any new findings," [citation omitted] we reject his contention that he had *no* further duty to investigate Johnson's role after filing the motion for judgment. The duty of "reasonable inquiry" arises *each time* a lawyer files a "pleading, motion, or other paper" or makes "an oral motion." Code § 8.01-271.1. If Oxenham had filed any paper or made any motion in the case *after* he knew, or reasonably should have known, that he could not create a factual issue of Johnson's involvement and malice, the court would have been justified in imposing a sanction against him.

*Oxenham v. Johnson*, 241 Va. at 287-88 (citation omitted).

Any basis for the imposition of sanctions must therefore be premised solely upon the contents of the July 16, 1996, Consent Order from the Juvenile Court. Even if the imposition of sanctions in a *de novo* appeal in a Circuit Court can be based upon an attorney's signature on a Consent Order entered in

---

[6] Respondent's Memorandum of Points and Authorities in support of discovery requests, p.5.

the Juvenile Court,[7] this Court finds that Neidig has failed to establish any "extraordinary circumstances" which would warrant the onset of discovery proceedings in this Court. The judge who will conduct the sanctions hearing will already have access to Mr. Volzer's recollection of his conversation with Dr. de Triquet, an affidavit from Dr. de Triquet noting his conversation with Ms. Tianti, Dr. de Triquet's medical records concerning the Neidig children, and Ms. Tianti's affidavit concerning her conversation with the doctor.

Under these circumstances, this Court declines to take a first step down what could become a very slippery slope towards acceptance of exhaustive sanctions litigation by both the judiciary and the bar. Such collateral litigation could subsume the intended salutary effect of Code § 8.01-271.1 "of reducing the volume of unnecessary litigation." *Oxenham*, 241 Va. at 286. Accordingly, Fairfax County's Motion for Protective Order forbidding the depositions of Cynthia Tianti and Margaret Belcher is granted.

---

[7] This Court does not decide this issue at this time.