## CIRCUIT COURT OF ROCKINGHAM COUNTY

Jim Dove,
t/a Jim's Drive-In

   v.

Dayton Town Council et al.

April 12, 1996

Case No. (Chancery) 15338

BY JUDGE PORTER R. GRAVES, JR.

The case was last before the Court on February 21, 1996, for argument upon the existing issues, after which the Court took the matters under advisement.

I will deal with the issues separately, except as otherwise stated.

### I. *Motion to Dismiss and Motion to Transfer*

On November 6, 1995, when the parties, by counsel, were before the Court, Mr. Fincher, counsel for the complainant, moved to amend the Bill of Complaint which was objected to by all counsel for the respondents who had filed Demurrers to the Bill of Complaint. The Court deferred argument on the Motion for Leave to Amend the Bill of Complaint until after arguments on the Demurrers, which were scheduled for December 21, 1995. Certainly, early on, the complainant, by counsel, realized potential problems in the pleading.

When all counsel were before the Court on December 21, 1995, the Court sustained all of the Demurrers and ordered that the complainant be given leave to amend the Bill of Complaint for declaratory judgment and strongly admonished the complainant to plead with particularity, due to the nature of the claims that counsel for complainant represented he would plead. It was ordered that leave was granted to "the Complainant to file an Amended Bill of Complaint which shall be filed no later than thirty days

from December 21, 1995, which said Amended Bill of Complaint shall be specific for the actions of the respondents therein complained of . . . ." No Amended Bill of Complaint was filed within thirty days from December 21, 1995, or thereafter.

Instead, the complainant, by counsel, filed an action at law thirty-one days after December 21, 1995, instituting a new and separate action. That filing did not comply with the Court's order entered as a result of the December 21, 1995, proceedings.

In the present case, the complainant proceeded on the correct side of the Court. He prayed for injunctive relief, and that can only be granted in equity. Section 8.01-270 of the Code of Virginia, 1950, as amended, is not applicable. That Code Section applies only where the complainant has erred in invoking the correct forum, not where the complainant chooses a proper forum. See *Stanardsville Volunteer Fire Co. v. Berry,* 229 Va. 578 (1985), and the ruling in *Knight v. Propst,* Chancery No. 14846, Circuit Court of Rockingham County, order entered October 13, 1994, (see transcript of ruling of September 21, 1994, attached as "Exhibit C" and "D" respectively to defendant, Town of Dayton, "Objection to Motion to Transfer Case from Equity to Law" filed herein).

The complainant argues that the Motion for Judgment initiating the action at law should be deemed compliance with the Court's order of December 21, 1995, and it should be ordered filed in the existing chancery cause. Also, the Court should transfer the total chancery cause to the law side of the Court. The vehicle used to accomplish that would be a *nunc pro tunc* order to be entered by the Court. The complainant cites *Pennsylvania-Little Creek v. Cobb,* 215 Va. 44 (1974), in support of the motion. In that case, the Court actually transferred the matter initially proceeded upon in equity to the law side of the Court, and allowed the complainant thirty days in which to amend its pleadings. Also, the complainant within such thirty day period filed seven separate Motions for Judgment which dealt separately with the issues of the seven parcels of land involved. The Court held it was not error for the trial court to rule that the complainant had an adequate remedy at law and to transfer the matter to the law side of the Court.

The remaining question in *Cobb, supra,* was whether the trial court erred in dismissing the complainant's cause against the defendants for failure to comply with its decree allowing the complainant thirty days to amend the pleadings. Instead of the complainant filing amendments within the existing suit, it filed seven new suits. All seven suits were filed within

the allowed time, and the Court found that the complainant substantially, and in good faith, complied with the court's decree. The complainant had stated it was proceeding pursuant to the decree entered in the cause. In its ruling the Court noted complainant's letter to the Clerk referred to the decree entered by the court, all of the consolidated causes, and the filing fees in connection with the same. Such action, the court ruled, was sufficient to prevent dismissal with prejudice of the complainant's cause against the defendants.

In this case the use of a *nunc pro tunc* order would be entirely improper.

> The power of courts to make entries of judgments and orders *nunc pro tunc*, in a proper case and in furtherance of the ends of justice, has been recognized and exercised from the earliest times, and the period in which the power may be exercised is not limited. The foregoing power is inherent, exists independent of statute, and is one of the common-law powers of a court. This power is based on the principle that an act, omission or delay on the part of a court should prejudice no one. As stated before, the office of a judgment *nunc pro tunc* is to record some act of the court done at a former time which was not then carried into the record, and the power of the court to make such entries is restricted to placing upon the record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak, but ought to have spoken. See *Michie's Jurisprudence for Virginia and West Virginia*, vol. 11A, *Judgments and Decrees*, § 40, page 77.

Here, the Court could only enter a *nunc pro tunc* order to memorialize an act that was previously taken. Since no such previous act was taken by the Court, no *nunc pro tunc* order can be entered.

In *Cobb, supra*, that case had already been transferred to the law side, and the complainant filed the seven new actions within the allotted time. Here, the case remained on the equity side, and the complainant, did not comply with the order of December 21, 1995, by filing an amended bill of complaint or filing it within the designated thirty day period. The instructions of the order were simple. They give some semblance of order to the proceedings. Here, there were multiple parties and multiple counsel involved. Certainly courts must give careful consideration before taking such drastic action as dismissal, at the pleading stage of a proceeding.

However, if the Court were to ignore complainant's complete failure to comply with any provision of the order of December 21, 1995, which gave complainant a full and fair opportunity to keep the cause pending, considering its initial shortcomings, the complexity of the matter, and the number of defendants and counsel involved, it would invite utter chaos in trying to maintain any control of this or any other suit to a final determination.

Accordingly, after thorough consideration of the matter, this cause must be dismissed. Although a decree has been tendered, I will not enter that decree, but request counsel, as hereinafter designated, to prepare a new decree according to the terms as set forth in this opinion.

## II. *The Issue of Sanctions Under § 8.01-271.1 of the Code of Virginia, 1950, as Amended*

It was not until 1987 that § 8.01-271.1 of the Code of Virginia came into existence. It provided certain relief to litigants aggrieved in situations that it seeks to protect.

The rights of individuals and other entities to bring suit against others have been generally maintained without any significant limitations. There are occasions where such suits are so ill pleaded, or so lacking in merit, or for a myriad of other reasons, cry out for relief by defendants who are damaged remarkably by such frivolous and unfounded claims. In such instances, to deny a defendant relief, considering the passage of § 8.01-271.1 of the Code of Virginia, would be just as unjust as closing the door to the complainant before the suit begins.

The primary thing the Court must examine in the present case, in considering the application of sanctions under the statute, is the Bill of Complaint. As stated, the Demurrers of the various defendants were sustained for reasons stated on the record, and the complainant was given the opportunity to amend the Bill of Complaint.

Due to the many counts of the Bill of Complaint, and numerous, complicated, and varied items of relief requested against the defendants, the defendants were forced to expend considerable effort and time defending such allegations, even at the Demurrer stage. A compilation of the "Fees and Costs Requested by Counsel Pursuant to Motions for Sanctions" has been prepared by the Court, and attached hereto as "Exhibit A." That list has been compiled from the filings of the various defendants as set forth in the Court file. I would invite counsel to examine those filings, and if "Exhibit A" is inaccurate, please immediately advise the Court. The total

amount of fees and costs requested by all defendants in the Motion for Sanctions is $49,641.98.

Section 8.01-271.1, among other things, provides:

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.

Such section further provides, among other things, that:

> If a pleading, motion or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Since the statute has had a rather limited existence, since 1987, an abundance of law on this subject does not exist. Probably the cases cited most frequently in interpretation of the statute are *Tullidge v. Board of Supervisors*, 239 Va. 611 (1990), *Oxenham v. Johnson*, 241 Va. 281 (1991), and *Nedrich v. Jones*, 245 Va. 465 (1993). The *Tullidge* case provides for the application of an objective standard of reasonableness in determining whether the "warranted by existing law" portion of this statute has been violated.

The Court must determine whether the complainant, his counsel, or both, have violated the sanctions statute, and if so, what appropriate sanction, including reasonable expenses and attorney's fees, if either, should be imposed upon the complainant, his counsel, or both.

Many times, in complex litigation, the Court must read and re-read the pleadings to gain an understanding of the suit and eliminate any confusion

that a first reading may invite. The purpose is to gain a better understanding of what the litigation involves. The reading of the bill of complaint in the present case had a completely adverse effect. The more I read it, the more confused I became.

The complainant sued the "Dayton Town Council"; "Town of Dayton, Planning Commission"; "Town of Dayton, Police Department"; numerous individuals, individually, and as members of the Planning Commission; one person individually and as Chief of Police of the Town of Dayton; numerous other persons individually; and the town attorney, individually.

Some of the defendants are named in the caption only, and not referred to elsewhere in the pleading. Other defendants are referred to in the caption, and only one other place in the multi-count bill of complaint. At some places the defendants are referred to collectively.

In a review of the bill of complaint, the Court could not determine what relief, if any, is requested against which defendant or defendants. The Court even posed a question to the complainant during argument, that if no defendant had responded and the bill was taken for confessed as to each defendant, what could the Court decree. That question still remains unanswered.

On February 21, 1996, complainant's counsel, Mr. Fincher, was represented by Mr. Klenkar and Mr. Mitchell upon the defendants' motions for sanctions, pursuant to § 8.01-271.1. Mr. Klenkar argued that no awards of sanctions are appropriate since there is an allegation of conspiracy among the defendants contained within the bill of complaint, and that allegation saves the day for the plaintiff. Also, the relief requested by the complainant can be granted against the Town in a § 1983 action. He cites the case of *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). At pages 690 and 691, *Monell* says:

> 1. Municipalities are included among those persons to whom § 1983 applies.
>
> 2. Local governing bodies can be sued directly under § 1983 for monetary, declaratory, and injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.
>
> Also, by the very terms of the statute local governments may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received

formal approval through the body's official decision making channels.

While the argument may be persuasive under the right circumstances, they do not exist in the present suit. No official adoption or promulgation of a policy statement, ordinance, regulation, or decision is alleged. Even if it were, Mr. Fincher's statements on December 21, 1995, must be considered. Furthermore, custom is defined as an habitual course of action. It is not alleged in the Bill of Complaint.

The Court inquired whether mere mention of "conspiracy" operated as a sanction buster. Certainly, if that is the case, any pleading, no matter how deficient, could avoid the ramifications of the sanction statute by minimal reference to the word.

For a review of the present case, the Court must look prior to February 21, 1996, and consider Mr. Fincher's statements at previous hearings. As Mr. Litten pointed out in his argument on February 21, 1996, as well as in his memorandums, counsel for the complainant, Mr. Fincher, made certain statements that would contradict his position taken by his counsel on February 21, 1996. In addition to those statements, set forth below, and as early as November 6, 1995, Mr. Fincher moved the court orally for leave to amend the bill of complaint. That may denote a tell-tale sign of a demurrable pleading. The Court is cognizant of the fact that just because a pleading is demurrable, it does not mean that it is sanctionable. Two separate standards are applicable.

Some statements made by Mr. Fincher in Court, prior to February 21, 1996, contradicting the "conspiracy as a sanction buster" argument, are as follows:

Argument by Mr. Fincher on December 21, 1995:

A. Transcript, page 53, lines 9-13: "With respect to the Town itself, your Honor, we will admit, they have a sovereign immunity with respect to all of these actions with the exception of the § 1983 action."

The Court must ask then, why was the Town included in all the other actions?

B. Transcript, page 55, lines 17-20: "Again, we are willing to concede we cannot sue the Town for any of the tort matters that we have alleged, but they are a party under the § 1983 action."

Again, the Court must ask the same question.

C. Transcript page 57, line 24: "Again, I will admit, your Honor, that with respect to those that are in 24, 25, 26 [referring to paragraph numbers

in the Bill of Complaint], there [sic] are conclusory allegations with respect to the involvement of the named defendants."

D. Transcript page 58, lines 6-8: "We did not make any assumption regarding the other people, except that they had participated in some way in directing those actions."

Is complainant's counsel saying that except for those specifically named in the allegations, the remainder of the defendants are proceeded against upon assumption only?

E. Transcript page 58, lines 21-24: "And, again, we admit that this is a matter that should be switched to the law side of the court and not be on the equity side of the court."

The complainant chose on which side of the court to file. Evidently, the complainant chose to bring numerous claims upon which he knew he could not prevail. After all, in the transcript at page 58, lines 19-21, complainant's counsel admits, "Your Honor, this is basically a conspiracy to injure business in a § 1983 action."

F. When the Court questioned complainant's counsel regarding the Court's authority to enjoin a legislative body from acting, complainant's counsel responded in the transcript at page 59, lines 23 through 60, line 3: "Maybe not with respect to these particular actions, but under the § 1983 action, this Court does have, in addition to assessing damages for those actions, have the power to enjoin any further actions directed against the defendants under that claim."

G. Transcript page 61, lines 9-11: "Well, again, Your Honor, we are conceding that this should not be a matter in equity."

H. Finally, after significant questioning by the Court on the authority of a Court to prevent legislative action or a legislative body to even consider such action, complainant's counsel admits he does not have any such authority at transcript, page 62, lines 13-15, "I don't have right now, again, because we came in here willing to concede that . . . ."

Certainly, the time for searching for such authority is not after suit is filed, but before the defendants are put to the task of significant trouble, time, expense, and aggravation in defending such a suit.

The most revealing revelation by the complainant's counsel is at page 63 of the transcript, lines 18-22, where he says "and as a matter of fact, the injunction and the declaratory relief was deemed to be a method of sort of going for a monetary judgment, trying to work out something in another way."

It does not end there. The final two revelations I must point out are:

(1) Transcript page 63, lines 23-24: "and, again, we agree that at the outset it was multifarious because we have made claims and substantiated that with fact . . . ."

(2) Transcript page 65, lines 21-22, upon questioning by the Court on enjoining the Town Council and request for authority, complainant's counsel says "your Honor, I would be glad to research that and get you an answer."

Considering everything above, the purpose and motive of complainant's counsel becomes clearer. Also, counsel is always best advised to do research before suit is filed, particularly since the passage of § 8.01-271.1.

In addition to the above admission by Mr. Fincher, the Court also recognizes the following.

(1) Under the prayer for relief in the bill of complaint, Paragraph A prays that Council's and Commission's actions are arbitrary, capricious, discriminatory, unreasonable, and in violation of the due process clause and equal protection clause of the Fourteenth Amendment to the United States Constitution and Constitution of Virginia. Paragraph B of the prayer for relief prays for a declaration that the actions of Commission and Council were ultra vires and therefore, null and void.

The biggest problem with complainant's prayer is that no action by the Commission or Council is alleged to have been taken. The Council speaks through its resolutions and ordinances, and none are alleged. Paragraph 12 of the bill of complaint alleges "discussed the possibility". Paragraph 13 alleges again "discussed the possibility of adopting a change to the zoning ordinance." Paragraph 14 alleges "have discussed and proposed several alternatives . . . ." Paragraph 15 alleges the Commission "Is currently threatening amendment to the zoning ordinance . . . ." Accordingly, the Town has taken no action.

In paragraph C of the prayer for relief, complainant prays "for a preliminary and permanent injunction restraining the Council and Commission from applying, asserting or otherwise enforcing the zoning amendment or any other action against the property of the complainant." The fallacy to Paragraph C is that there has been no zoning amendment.

In Paragraph D of the prayer for relief the complainant prays "for preliminary and permanent injunction restraining *all defendants* herein from taking any further action or making any further comments regarding complainant and/or the business." The Court has questioned the complainant's counsel, Mr. Fincher, repeatedly on how the Court can enjoin a legislative

body, the Town Council, from taking legislative action or even considering it.

(2) The complainant's suit should not have been brought in chancery, and the complainant, by counsel, Mr. Fincher, admitted it. See transcript of December 21, 1995, proceedings, page 61, lines 9-11.

(3) In the prayer for relief the complainant prays for compensatory damages in the amount of $500,000.00, but does not say against which defendants. Furthermore, with respect to Paragraph G of the prayer for relief, punitive damages are requested, but he does not indicate against which defendants, and they could not be awarded against the Town.

(4) The cause is multifarious. The Court has ruled that, and the complainant, by counsel, Mr. Fincher, conceded it in argument on December 21, 1995, as cited above.

(5) Complainant admitted that he should have only sued the Town under the 1983 action. See complainant's admission above.

(6) I can find nothing in the pleading which would allow relief to be sustained for complainant on the antitrust provisions in the prayer in the bill of complaint. The complainant has not alleged anything regarding a diminished competition. An antitrust suit is to take care of a situation where there has been oppression. The complainant only claims that his business has been harmed. Such allegations are not sufficient.

Due to time constraints, I will not repeat the various arguments set forth by defendant, Town of Dayton, by counsel, Mr. Litten, but find that many of the shortcomings and the inability of plaintiff to prevail are very adequately addressed in the legal arguments set forth in the memorandums and argument, with appropriate citations, filed by the Town.

In *Oxenham v. Johnson*, 241 Va. 281 (1991), at page 286, Justice Whiting, writing on behalf of the Court, stated:

> The possibility of a sanction can protect litigants from the mental anguish and expense of frivolous assertions of unfounded factual and legal claims and against the assertion of valid claims for improper purposes. And, sanctions can be used to protect courts against those who would abuse the judicial process.

The eleventh hour and valiant attempt by Mr. Klenkar and Mr. Mitchell on February 21, 1996, to save the day, came too late. The die had been cast.

What may have been a proper § 1983 claim upon the law side of the Court, if appropriately pleaded at the Demurrer stage, has been lost in the

maze of inappropriate actions, joinders, multifariousness, elections, motions, and failure to comply with the December 21, 1996, order, all as engineered by the complainant and his counsel, Mr. Fincher, who has admitted many of the problems.

The present case begs for the relief afforded by § 8.01-271.1 and as interpreted in *Oxenham, supra*, by Justice Whiting.

After considering the statute on sanctions, and the cases decided in connection with such statute since 1987, I find that there was no possibility of success of the present suit under existing precedent, except possibly as stated above; and that there is no good faith argument for the extension, modification or reversal of the existing law. I further find that to the best of complainant's or his counsel's knowledge, information and belief, it could not have been formed after reasonable inquiry, upon consideration of the bill of complaint, as well as the admissions of complainant's counsel, Mr. Fincher, on December 21, 1995. That determination is made after applying an objective standard of reasonableness as required. Even if I were to hold that the § 1983 action is correctly pleaded, it is impossible to determine, by reviewing the bill of complaint, against which defendants such an award is prayed or could be allowed.

Accordingly, the defendants' motions for sanctions will be sustained in the amounts as set forth below.

### III. *Defendants' Request for Relief under § 18.2-500*

The complainant argues that either the complainant or defendants are entitled to attorney's fees in accordance with a bill of complaint brought under § 18.2-499, depending upon which party has substantially prevailed. The defendants argue that they have substantially prevailed in the present suit, and that the complainant has abandoned it. Furthermore, the Town of Dayton could not be enjoined in accordance with the matter.

An award under § 18.2-500 cannot be against the attorney, but must be against the party.

The complainant responds that even if the Court dismisses the case, it is not a dismissal on the merits and the provisions of § 18.2-500 should not be used to require the complainant to pay defendant's counsel's fees and costs.

Based upon my analysis of §§ 18.2-499 and 18.2-500, I find that the defendants have substantially prevailed, the cause having been dismissed, and the defendants shall have attorney's fees imposed against the complainant as set forth below.

## IV. *Defendant, Town of Dayton, Motion to Compel*

Mr. Fincher's response to the motion to compel of defendant, Town of Dayton, is that he had a fire at his law office and it had to be vacated. All materials located therein were put in storage and he had difficulty in trying to obtain the material in a timely manner. He proffered that the movers had removed certain items that were not supposed to be moved. Mr. Fincher also proffered that he had made all reasonable efforts to obtain the items timely. Finally, he argued that there has been no prejudice to the defendants. Mr. Litten, on behalf of the Town, replied that if only Mr. Fincher would have responded to his letters, he would have had sympathy in his situation due to the fact that he had previously suffered a fire at his office.

Based upon everything before me, the Court will not impose sanctions against complainant's counsel, Mr. Fincher, or the complainant, upon the motion to compel for the foregoing reasons.

## V. *Award*

The Court has determined that awards on behalf of the defendants under § 8.01-271.1 of the Code of Virginia, 1950, as amended, as well as an award under § 18.2-500 of the Code of Virginia, will be allowed. The former is allowable against both the complainant and his counsel, and the latter is allowable against only the complainant, as by each of the statutes permitted.

In determining the amount of such awards, the Court has considered fully all pleadings, memorandums, argument, and the existing law.

Among other things, the Court has considered the complainant's desire on November 6, 1995, to amend, without going further. Also, a substantial amount of fees and costs were incurred after such date by the defendants until December 21, 1995, and thereafter.

It must be further noted that there are variances in the percentage of the costs and fees incurred by the numerous defendants and their counsel at differing dates up to the February 21, 1996, argument before the Court.

After a full review, it is impossible to determine the allowable awards with mathematical precision.

Considering everything, the Court awards fifty percent or one-half of the attorneys' fees and costs listed by each respective defendant's counsel as shown upon "Exhibit A, Fees and Costs Requested by Counsel Pursuant to Motions for Sanctions" attached hereto.

The Court has examined such fees and costs, and determines they are reasonable in accordance with §§ 8.01-271.1 and 18.2-500, both of the Code of Virginia, 1950, as amended.

The Court has also considered that sanctions under § 8.01-271.1 may be imposed against counsel, a represented party, or both, and that the award under § 18.2-500, may only be imposed against the plaintiff in the present suit. After such consideration, the Court determines that sixty percent of the award shall be assessed against the complainant, and forty percent of the award shall be assessed against his counsel, Mr. Fincher.

I request Mr. Litten to prepare an appropriate decree providing for the following:

(1) Incorporating this letter opinion by reference therein;

(2) Dismissing the cause for the reasons set forth herein;

(3) Awarding the specific sanctions in favor of the defendants against the complainant and his counsel, Mr. Fincher, as stated herein, and requiring payment thereof within ninety days from the entry of the decree.

*Exhibit A*

*Fees and Costs Requested by Counsel*
*Pursuant to Motions for Sanctions*

| Attorney | Fees | Costs | Total |
|---|---|---|---|
| Steven M. Blatt, Esq. | 2,993.12 | 554.92 | 3,548.04 |
| Dale A. Davenport, Esq. | No Request in File | | |
| Robert B. Delano, Jr., Esq. | 4,356.00 | 394.40 | 4,750.40 |
| Daniel L. Fitch, Esq. | 431.00 | | 431.00 |
| Neal S. Johnson, Esq. | 5,437.50 | 153.30 | 5,590.80 |
| Donald D. Litten, Esq | 22,047.25 | 2640.99 | 24,688.24 |
| Edward A. Natt, Esq. | 750.00 | | 750.00 |
| Patrick J. Nooney, Esq. | 1,867.50 | 189.00 | 2,056.50 |
| Mark D. Obenshain, Esq. | | | |
| Defendant, Bartley | 483.00 | | 483.00 |
| Defendant, Nester | 431.00 | | 431.00 |
| Defendant, Layman | 483.00 | | 483.00 |
| Defendant, Early | 483.00 | | 483.00 |
| Defendant, Michaels | 431.00 | | 431.00 |

| | | | |
|---|---|---|---|
| Defendant, Wine | 431.00 | | 431.00 |
| Defendant, Phibbs | 720.00 | | 720.00 |
| Defendant, K. Dispanet | 431.00 | | 431.00 |
| Defendant, B. Dispanet | 431.00 | | 431.00 |
| Defendant, Shifflett | 1,005.00 | | 1,005.00 |
| Totals | 5,329.00 | | 5,329.00 |
| Victor M. Santos, Esq. | | | |
| Defendant, Shifflett | 342.00 | | 342.00 |
| Defendant, Way | 342.00 | | 342.00 |
| Defendant, Supko | 252.00 | | 252.00 |
| Totals | 936.00 | | 936.00 |
| T. J. Wilson, IV, Esq. | 1,562.00 | | 1,562.00 |
| Grand Totals | 45,709.37 | 3932.61 | 49,641.98 |