# CIRCUIT COURT OF FAIRFAX COUNTY

Decision Support Systems, Inc.

v.

Universal Data Systems, Inc.

July 14, 1998

Case No. (Law) 170784

BY JUDGE M. LANGHORNE KEITH

This matter came on for a hearing on July 2, 1998, on Universal Data Systems, Inc.'s ("UDSI") motion for sanctions against Jonathan Gelber, Esq. The motion was denied in the General District Court, and UDSI appealed to the Circuit Court. Under familiar principles, the Court is considering the motion *de novo*. After considering the evidence and the argument of counsel, I make the following findings of fact and conclusions of law.

## I. *Findings of Fact*

On July 9, 1997, Mr. Gelber filed a Warrant in Debt against UDSI[1] in the General District Court for Fairfax County. The amount in controversy was $4,290.85 with interest at 18% from November 29, 1996, plus costs and reasonable attorney's fees. The Warrant was served on UDSI's registered agent in Maryland, CT System, on July 11, 1997. After service was effected, Mr. Gelber testified that he had at least two conversations with Andrew Griffin, a senior paralegal with Motorola's law department. On July 16, 1997, after those conversations, Mr. Gelber faxed Mr. Griffin information concerning UDSI's Credit Application and Agreement with Mr. Gelber's client, Decision Support Systems, Inc. ("DSSI") along with additional invoice information. Exhibit A. The Credit Application and Agreement clearly showed that the Universal Data

---

[1] UDSI is a subsidiary of Motorola, Inc.

Systems, Inc., that DSSI was doing business with was a District of Columbia corporation[2] whose president was Doris O. Bim. The Credit Application and Agreement also listed a Dun & Bradstreet Account number and stated that the Universal Data Systems, Inc., that DSSI did business with was located in Silver Spring, Maryland. The address for this Universal Data Systems, Inc., was 15121 Timberlake Drive, Silver Spring, Maryland 20904.

On July 23, 1997, Mr. Griffin faxed Mr. Gelber a letter informing him that, after reviewing the material Gelber sent on July 16, there might be a case of mistaken identity. Griffin's fax informed Gelber that the UDSI that was a subsidiary of Motorola had never been in Silver Spring, Maryland, and had never employed Doris O. Bim. On August 11, 1997, Mr. Griffin sent Mr. Gelber another fax informing him that Motorola had conducted a Dun & Bradstreet search and had "identified what appears to be the proper party to receive service for your warrant in debt against Universal Data Systems." The fax further informed Gelber that a legal search had "identified twelve companies with the name Universal Data Systems, only one of which shows Doris Bim as its president. This company is listed as selling wholesale computers and peripherals. Its registered agent for receiving process is not the CT Corporation (Motorola's registered agent) but is instead '*1521 Timberlake Dr., Silver Spring . . .*'." Exhibit C (emphasis added). Mr. Griffin's fax attached the Dun & Bradstreet report that had the same Dun & Bradstreet Account number listed on the Credit Application and Agreement for Doris O. Bim's Universal Data Systems, Inc.

Despite this clear and useful information that the UDSI he had sued was not Ms. Bim's Universal Data Systems, Inc., Mr. Gelber sent Mr. Griffin a letter on August 21, 1997, informing Griffin that he had conducted a search with the Maryland authorities and enclosed documents that showed that a corporation named Universal Data Systems, Inc., had registered in Maryland. The letter further stated that Mr. Gelber had "demonstrated a Maryland corporation and the proper Maryland documentation. The possibility *may* exist that Doris Bim has assumed the name of a corporation or corporate entity owned by Motorola. If so, your remedy lies against Doris Bim, although what your actions are in this case are beyond the scope of my responsibilities."

---

[2] At the July 2 hearing, Mr. Gelber testified that he was confused as to whether the Credit Application and Agreement listed the state of incorporation as "D.C.," District of Columbia, or "DE," Delaware. Even a casual glance at this document shows that it clearly lists "D.C." not "DE" as the state of incorporation. Gelber's claim of confusion (raised for the first time at the July 2, 1998, hearing) is not credible and is rejected by the Court.

Exhibit D. In fact, despite Mr. Gelber's assertions, the documentation did not show that UDSI was a Maryland corporation. The documents showed that the UDSI that Mr. Gelber had sued was a Delaware corporation registered in Maryland as a foreign corporation with its principal office in Huntsville, Alabama. In addition, the 1994 Credit Application and Agreement indicated that Ms. Bim's Universal Data Systems, Inc., had been incorporated for six years. The State of Maryland information indicated that UDSI had been incorporated in January, 1984, a difference of four years. The Maryland information also listed Huntsville, Alabama, as UDSI's principal place of business, while the Bim Credit Application and Agreement listed only Silver Spring, Maryland, as its office.

Having failed in its efforts to have Mr. Gelber dismiss the Warrant in Debt, UDSI filed for a Bill of Particulars on September 10, 1998, the Warrant's return date. On September 25, 1997, Mr. Gelber filed a Bill of Particulars acknowledging the possibility of two identically named corporations and attaching the Credit Application and Agreement and Maryland information referred to above. The Bill of Particulars states: "To the best of Plaintiff's information, no other corporation domesticated or foreign [sic] within the state of Maryland exists with the name of Universal Data Systems, Inc." Exhibit L. However, Gelber's assertion is clearly incorrect. To the contrary, even if Mr. Gelber ignored the information he received from Mr. Griffin, the documentation attached to the Bill of Particulars demonstrated that there were two corporations with the name Universal Data Systems, Inc., which were either doing business in the state of Maryland or which had done business in the state of Maryland.

By November 17, 1997, Mr. Gelber had filed a second Warrant in Debt against Ms. Bim d/b/a "Universal Data Systems, Inc." and "Universal Data Systems, Inc." an unincorporated entity. Gelber moved the General District Court to consolidate the two Warrants in Debt for trial.

After additional court appearances, the UDSI case was set for March 3, 1998. Mr. Gelber, in response to Motorola's request for stipulations (to avoid having a witness fly up from Alabama), eventually agreed that certain corporate documents of UDSI could be admitted without further authentication but that "all else is settlement discussions." On March 3, 1998, Mr. Gelber nonsuited UDSI.

## II. *Conclusions of Law*

The issue here is whether the Warrant in Debt against UDSI or any of the subsequent pleadings and motions were "well grounded in fact" to the best of

Mr. Gelber's knowledge, information, or belief, formed after reasonable inquiry. Va. Code Ann. § 8.01-271.1. In considering this issue, the Court must apply an objective standard of reasonableness. *Nedrich v. Jones*, 245 Va. 465 (1993); *County of Prince William v. Rau*, 239 Va. 616 (1990); *Tullidge v. Board of Supervisors*, 239 Va. 611 (1990). While Mr. Gelber was certainly careless and inattentive to detail in filing the Warrant in Debt against UDSI, the Court cannot find that his initial filing was so lacking in foundation as to violate the standards set forth by the Supreme Court. After August 11, 1997, however, when Motorola gave him the benefit of their research concerning the number of corporations using the name Universal Data Systems, Inc., and that Ms. Bim's corporation was different from Motorola's subsidiary, Mr. Gelber was not just careless; he obstinately refused to make any changes in his approach to suing UDSI. He utterly failed to make a reasonable inquiry into the status of the two corporations before he filed his Bill of Particulars and Motion for Consolidation and Continuance of Trial.[3] His only response was that the two corporations must work it out between themselves, thus completely and improperly avoiding his own responsibility to ensure that he had sued the correct corporation. There was no testimony that Mr. Gelber ever consulted his client concerning any Motorola connection to the company that DSSI did business with. In addition, the Credit Application and Contract stated that UDSI was not a subsidiary of any other corporation. This fact alone should have alerted Mr. Gelber that perhaps he had sued the wrong corporation when Motorola responded to the service of the Warrant in Debt.

Mr. Gelber believes that even if he knew Motorola's UDSI was not the corporation DSSI did business with, such knowledge would not support sanctions because he had no continuing duty to update his pleadings, citing *Oxenham v. Johnson*, 241 Va. 281 (1991). Mr. Gelber's belief is incorrect and the holding in *Oxenham* does not support his position. In *Oxenham*, the Court rejected a lawyer's contention that he had no further duty to investigate the facts after the filing of his initial pleading. The Court held that "the duty of 'reasonable inquiry' arises *each time* a lawyer files a 'pleading, motion, or other paper' or makes 'an oral motion'." *Id.* at 288 (emphasis in the original). Mr. Gelber did not come close to fulfilling this duty. Although the Court is

---

[3] Mr. Kalish, a lawyer with six months' experience, testified that he easily determined that Mrs. Bim's corporation was a District of Columbia corporation. As noted above, the only inquiry Mr. Gelber made was with Maryland. That data indicated that the UDSI Mr. Gelber has sued was a Delaware corporation while the Credit Application and Agreement indicated that the corporation that DSSI was dealing with was a District of Columbia corporation.

well aware of the Supreme Court's admonition that care must be taken that sanction litigation does not itself defeat the purpose of reducing the volume of unnecessary litigation, Mr. Gelber cannot escape responsibility for his transgression under that rubric. Courts must sent a message that conduct such as Gelber's cannot be tolerated in a system that demands professionalism from those given the privilege to practice law before them.

Furthermore, the Court is disturbed by Mr. Gelber's sarcastic style of letter writing in this case, exemplified by, but not limited to, the letter he wrote on December 10, 1997 (Exhibit H; copy attached as Appendix to this opinion). Although such a letter does not violate the express strictures set forth in Va. Code Ann. § 8.01-271.1, this kind of invective is not professional and should play no part in a Virginia lawyer's lexicon.

After considering the billings submitted by UDSI, the Court awards $5,000.00 in sanctions against Mr. Gelber. The sanctions will be paid on or before August 15, 1998.

*Appendix*

December 10, 1997

Dear Mr. Murphy:

I am in receipt of your letter of December 1, 1997. I must assume that this letter has been written for one of two possible purposes. One, to satisfy your billing as to your client or, two, to present to a judge at some future time just to prove how right some of your bizarre assertions are.

Rather than bother wasting more time in responding to this letter, I would suggest that you consider action against Ms. Bim for appropriating the name of your client's subsidiary in Maryland. From my initial contacts with Motorola before your representation commenced, that was my understanding of what your client intended to do. Apparently, that would have been an action in Maryland in which you would not be able to participate. Nonetheless, that does seem to be your client's remedy.

If, in the future, you have a desire to write a letter that will satisfy your billing to your client, do not bother to send me a copy. It wastes everyone's time.

Sincerely,
/s/ Jonathan Gelber