## CIRCUIT COURT OF FAIRFAX COUNTY

United Healthcare Services, Inc.,
and William L. Griffith & Co.
of Va., Inc.

v.

B. F. Saul
Real Estate Investment Trust

v.

Trammel Crow
Real Estate Services, Inc.

August 18, 1999

Case No. (Law) 174215

BY JUDGE R. TERRENCE NEY

This matter was tried before me on August 2 and 3, 1999. At the conclusion of the trial, I took the matter under advisement. For the reasons stated herein, I find for the Plaintiff, United Healthcare Services, Inc.

On April 25, 1996, Plaintiff United Healthcare Services, Inc. (hereinafter "UHC") entered into an agreement with Defendant B. F. Saul Real Estate Investment Trust (hereinafter "Saul") for the lease of certain commercial property ("the leased premises") in McLean, Virginia. The lease agreement included a tenant improvement allowance in the amount of $699,700 for UHC to make improvements to the leased premises.

Plaintiff Wm. L. Griffith & Co. of Virginia, Inc. (hereinafter "Griffith") is a general contractor hired by UHC to construct certain tenant improvements on the leased premises. In May 1996, Griffith demolished certain improvements owned by Saul located outside of the leased premises. Saul

claimed substantial financial damages as a result of Griffith's actions and withheld $301,337.04 in tenant improvement funds which were due UHC.

On May 24, 1998, UHC and Griffith filed this action against Saul, seeking recovery of the withheld tenant improvement allowance and a declaratory judgment establishing Griffith's right of equitable subrogation to UHC. Saul filed a counterclaim alleging, *inter alia*, negligence against Griffith and UHC and seeking recovery of lost rent and replacement cost damages.

On July 30, 1999, Plaintiff Griffith and Third-Party Defendant Trammel Crow Real Estate Services, Inc., were dismissed from this action. Trammel Crow was brought into the suit as a counter-defendant by Saul.

On August 2, 1999, the day of trial, Saul suffered a nonsuit as to its counterclaim for lost rent against UHC.

Two issues are presented for decision. First, whether Saul improperly withheld the tenant improvement funds from UHC. Second, if so, whether Saul should be required to reimburse UHC for its attorney's fees and costs pursuant to Virginia Code § 8.01-271.1 because of its assertion of groundless defenses and counterclaims to UHC's action. I answer both questions in the affirmative.

## I. *Saul's Withholding of UHC's Tenant Allowance Funds*

Rarely does an action involving commercial leasing, landlord and tenant, and breach of contract issues, including construction overtones, if not disputes, present such an uncomplicated set of virtually, if not completely, undisputed facts.

The situation is disarmingly simple. The landlord, Saul, agreed to allow its tenant, UHC, $699,000.00 in tenant allowances. The monies were withheld by Saul to be paid upon completion of the tenant work. UHC hired Griffith to do the work, which included demolition of improvements in the space to be occupied by UHC. Griffith, through plain error, demolished improvements in adjacent, unoccupied space belonging to Saul. Upon its discovery, the same day as the demolition occurred, Griffith offered to rebuild the improvements or allow a credit for their value to Saul. UHC Exhibit No. 7. Saul did not accept either offer and subsequently advised UHC that it had suffered damages by reason of the demolition in the amount of $301,000.00,[1] which it then unilaterally withheld from the $699,000.00 tenant allowance it was holding.

---

[1] Later, this sum was increased to $324,000.00. By trial, it had shrunk to $210,000.00.

The damages asserted by Saul consisted or two elements, lost rent in the amount of $116,126.68 and the costs of replacement of the demolished improvements in the amount of $210,628.00. By trial, if not before, it was absolutely clear that Saul had suffered no lost rent damages — it never had a tenant for the space — and further that it had never spent any monies to "replace" the demolished improvements. Even more telling, Saul's subsequent tenant for the space, the American Arbitration Association, redesigned it completely so that all that had been inadvertently demolished by Griffith would have had to be intentionally demolished by Saul. What little remained to be demolished was at less cost to Saul, approximately $7,500.00 less, as a result of Griffith's prior efforts. UHC Exhibit No. 50 (trial testimony of Frederick Hammond).

Notwithstanding these events, Saul refused to release the withheld monies to UHC, and this suit followed.[2]

One searches for a colorable, much less justifiable, reason for the withholding of the funds, at least after the initial recognition that no tenant was lost and the demolished improvements would have had to have been demolished in any event. Not only did the existing improvements fail to fit the configuration of the space eventually occupied by the AAA, but they were antiquated and failed to comply with the Americans with Disabilities Act, which became law subsequent to their construction but prior to AAA's proposed use of the space. And, whatever may be said about the initial wisdom to withhold the funds after demand and after the onset of this litigation, withholding them after the demand of April 30, 1999, when the totally baseless nature of Saul's claims was clearly explained in a letter to counsel,[3] is unfathomable.

Simply put, despite the unintentional destruction of Saul's improvements by Griffith,[4] Saul suffered absolutely no money damages whatsoever from their destruction. Saul did not even attempt to show a loss of rent; it nonsuited that claim on the morning of trial.

Saul's proof as to the replacement costs might have had some resonance if it had been accompanied by even a suggestion that Saul intended or planned, or seriously considered, or did anything whatsoever evidencing an intention to spend the withheld monies on the affected space because of the

---

[2]  Griffith was an initial plaintiff as an alleged equitable subrogee to the rights of UHC by virtue of an indemnification agreement between it and UHC. Trammell Crow, the real estate broker for the alleged lost tenant Infotech, was brought in by Saul. Both parties were dismissed prior to trial.

[3]  UHC Exhibit No. 1.

[4]  Griffith is assumed for purposes of this opinion to be UHC's agent.

harm caused by the demolition. Not only did it not do so, but, to the contrary, its own employees acknowledged that it would have been "ridiculous" to do so until such time as the needs of any new tenant could be determined. (Deposition testimony of Frederick Hammond at 106:17-20 and 107:3-11 (read into the record as substantive evidence).) In that respect alone, Saul acted wisely. The evidence was clear that the AAA would not use *any* of the existing improvements and that they would had to have been demolished in their entirety. UHC Exhibit No. 3.

In short, there was absolutely no basis for Saul to withhold any part of UHC's tenant allowance. Saul suffered no damages as a result of the unintentional demolition by Griffith of the improvements in the adjacent space. For these reasons, UHC's claim as to the withheld monies in the amount of $351,057.65, which includes prejudgment interest from September 16, 1997, is granted.

## II. *Attorney's Fees*

Virginia Code § 8.01-271.1 provides, in pertinent part:

The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... .

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

The purpose of the section is clear — to place a reasonable duty of inquiry upon counsel before initiating or continuing to prosecute baseless litigation.

Courts have been reluctant if not loath to enforce the same or similar provisions.[5] Whether based on our heritage of "American Rule" dicta as to each party's responsibility for attorney's fees, or a genuine respect for the ultimate value of "zealous representation," only a few courts have been willing to impose an obligation for attorney's fees absent explicably apparent egregious circumstances or conduct.

Here, UHC challenges the conduct of Saul's counsel throughout the course of the litigation — by continuing with it though it knew Saul had no viable claim or defense — as well as the conduct of its counsel at the outset, namely by signing pleadings that asserted claims that were known, *or should have been known upon reasonable inquiry,* to have been without merit.

Saul's counsel responds that as to the lost rent claim, it justifiably relied upon a letter from Brian Petruska, a commercial leasing agent for Trammell Crow, who represented the allegedly "lost" tenant, Infotech. The letter, dated May 16, 1996, stated as follows:

> I want to thank you for your May 8, 1996, proposal to lease space at 8201 Greensboro Drive. Unfortunately, Infotech can no longer consider the building as an option due to the demolition of the perimeter offices. In addition to the potential impact on the econmics [sic], the tenant requires as-is space with "immediate" occupancy.

Saul Exhibit No. 12.

Yet, despite this letter, Saul, if not its outside counsel, had to know that it never had a lease agreement with Infotech or was even close to having one. Worse yet, no one from Infotech even remotely suggested that it wanted the space "as is" or even wanted the space at all. The evidence at trial was completely to the contrary. Saul's vice president, Byron Barlow, admitted at trial that *even if* Saul had an offer to lease from Infotech — which it did not — it was not bound to accept it, and, in fact, did not ever even purport to accept it. There was no offer to accept. In any event, only one telephone call or letter to Mr. Petruska would have revealed that his letter was a sham. The

---

[5] Virginia courts, however, have awarded attorney's fees and costs as sanctions pursuant to Va. Code § 8.01-271.1 for a party's failure to perform a reasonable prefiling inquiry into the factual basis of its position. *See, e.g., Taylor v. Midgett,* 46 Va. Cir. 152 (City of Norfolk 1998); *Dove v. Dayton Town Council,* 39 Va. Cir. 159 (Rockingham County 1996); *Murphy v. Chadwyck-Healey, Inc,* 31 Va. Cir. 163 (City of Alexandria 1993). Virginia courts also have held that federal opinions interpreting Federal Rule of Civil Procedure 11 are useful in interpreting Va. Code § 8.01-271.1. *See, Oxenham v. Johnson,* 241 Va. 281, 402 S.E.2d 1 (1991).

letter was written as a "favor" to a Saul employee who was trying to protect himself from any adverse consequences as a result of this entire matter. UHC Exhibit No. 76 (deposition testimony of Brian Petruska dated July 12, 1999, who testified as follows: "Brian Katz, who I had known for probably 10 years, was a friend of mine and a co-worker, opposite, different firms, and he asked me to write it .... And he wanted me to help write him a letter that would cover his [expletive deleted] basically."). This could have been — and should have been — discovered upon reasonable investigation of Saul's counsel. And, even if it was not discovered prior to the institution of the litigation, it was learned certainly well prior to trial. In short, there never was a colorable — much less viable — lost rent claim. The UHC/Saul lease agreement also contained a clause that explicitly waived consequential damages. The lost rent claim would certainly constitute a consequential, as opposed to direct, damage. *NAJLA Associates, Inc. v. William L. Griffith & Co.*, 253 Va. 83, 480 S.E.2d 492 (1997).

Insofar as the replacement costs' claim is concerned, Saul's counsel *had* to know prior to trial that Saul had not suffered even a scintilla of damages. The proof here is also crystal clear.

1. Griffith offered to replace the premises. Saul did not accept. UHC Exhibit No. 7.

2. Griffith offered Saul a credit. Saul did not accept. UHC Exhibit No. 7.

3. Saul never intended to replace the improvements until it knew what its next tenant would require. Deposition testimony of Steven Corey at 153:15-21 (read into the record as substantive evidence).

4. Saul recognized that to replace the improvements prior to knowing the new tenant's requirements would be "ridiculous." Deposition testimony of Frederick Hammond at 106:17-20 and 107:3-11 (read into the record as substantive evidence).

5. Saul did not replace the improvements.

6. Saul enjoyed a reduced cost of demolition thanks to Griffith's inadvertent destruction of nearly all of the improvements. Trial testimony of Frederick Hammond.

7. The improvements were outdated, outmoded, used, and did not comply with the requirements of the Americans with Disabilities Act. UHC Exhibit No. 3.

8. The AAA could not use *any* of its existing improvements. UHC Exhibit No. 3.

On top of this, Saul admitted that it never segregated or escrowed the funds withheld, had no plans for them if it prevailed in this litigation, and had simply included them in its general operating account.

Against all of this, no compelling reasons exist for not imposing on Saul the responsibility for UHC's and Griffith's attorney's fees and costs, which *never* would have been incurred but for Saul's unreasonable position in this matter from the outset and throughout the course of this litigation. As stated previously, at least by April 30, 1999, Saul and its counsel fully knew the potential consequences of its obdurate behavior. Yet that same behavior continued. In Virginia, it is clear that the duty of reasonable inquiry is ongoing. "The duty of 'reasonable inquiry' arises *each time* a lawyer files a 'pleading, motion, or other paper' or makes 'an oral motion'." Virginia Code § 8.01-271.1. *Oxenham v. Johnson*, 241 Va. 281, 288, 402 S.E.2d 1, 4 (1991) (emphasis in the original).

If, and it is a very big "if," Saul and its counsel were not under a duty at the outset of this litigation to make such reasonable inquiry so that they would know or should have known of the meritless nature of Saul's claim and defenses — and I hold that they were and should have known — Saul and its counsel certainly *knew* during the course of the litigation the true nature of the situation. *See Nemeroff v. Abelson*, 704 F.2d 652 (2d Cir. 1983); *Decision Support Systems, Inc. v. Universal Data Systems, Inc.*, 46 Va. Cir. 201 (Fairfax County 1998) (appeal denied).

Accordingly, UHC's and Griffith's claims, pursuant to § 8.01-271.1, for attorney's fees and costs are granted in the sum of $251,018.16 against Saul. If the reasonableness of these fees and costs is contested by Saul, then a separate hearing will be set to address that issue.